## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAN SCHECHTER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>HYUNDAI MOTOR AMERICA and HYUNDAI MOTOR COMPANY,<br><br>    Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jan Schechter ("Plaintiff"), residing at 1131 Darlene Avenue, Ocean, NJ 07712, brings this class action against Hyundai Motor Company ("HMC"), headquartered at 12, Heolleung-ro, Seocho-gu, Seoul, South Korea, and Hyundai Motor America ("HMA"), headquartered at 10550 Talbert Avenue, Fountain Valley, California 92708 (together, "Hyundai" or "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease or leased a 2017-2018 Hyundai Santa Fe or a 2017-2018 Hyundai Santa Fe Sport (the "Hyundai Santa Fe" or "Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and/or leased by HMC and HMA.  The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:

## NATURE OF THE ACTION

1.      Defendants wrongfully and intentionally concealed one or more defects that cause, among other issues, significantly delayed acceleration (including but not limited to delayed acceleration when turning or merging onto a road or highway), loss of power, and rough shifting (the "Powertrain Defect").

2.      The Powertrain Defect has forced members of the Classes (defined below) to incur out of pocket costs to remediate the defect.

3.      In the case of Plaintiff, Hyundai refused to provide him with a meaningful resolution to this dangerous issue, despite numerous attempts by Plaintiff to have the Powertrain Defect remedied by Hyundai.

4.      Hyundai has also failed to provide members of the Classes with any fix or remedy for the Powertrain Defect, despite voluminous customer complaints.

5.      The Powertrain Defect has been documented to occur without warning during vehicle operation, thereby posing an extreme and unreasonable safety hazard to drivers, passengers, other motorists and pedestrians. Many Class Vehicle owners have reported a significant delay in the Class Vehicle's response while attempting to accelerate from a stop and/or while cruising in situations that require the ability to accelerate rapidly (e.g., merging on to the highway, changing lanes, etc.). Other Class Vehicle owners have reported jerking, lurching, and/or engine revving associated with the delayed acceleration.

6.      The Class Vehicles are marketed as safe for use. Defendants failed to disclose the Powertrain Defect to consumers, despite their knowledge that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the Powertrain Defect from Plaintiff and the other members of the Classes, and failed to disclose it to them at the time of purchase or lease. Had Plaintiff and members of the Classes known about the Powertrain Defect, they would not have purchased and/or leased the Class Vehicles or would have paid less for them.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered

2

ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

7.      Plaintiff is informed and believes, and based thereon alleges, that despite notice of the Powertrain Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Powertrain Defect, have not offered its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Powertrain Defect. Defendants have refused to repair or replace the Class Vehicles despite the fact that the Class Vehicles are under a comprehensive warranty, as explained in detail below. Thus, Defendants have wrongfully and intentionally transferred the cost of repair of the Powertrain Defect to Plaintiff and members of the Classes by fraudulently concealing the existence of the Powertrain Defect.

8.      HMA provides warranty coverage for Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, HMA offers a ten-year or 100,000-mile Powertrain Warranty to original owners, which "[c]overs repair or replacement of powertrain components (i.e., selected engine and transmission/transaxle components), originally manufactured or installed by Hyundai that are defective in material or factory workmanship, under normal use and maintenance."  For all subsequent owners, the Powertrain Warranty is limited to five years, or 60,000 miles. Under warranties provided to Plaintiff and members of the Classes, Defendants promised to repair or replace defective powertrain components arising out of defects in materials and/or workmanship, such as the Powertrain Defect, at no cost to owners or lessors of the Class Vehicles.

9.      Defendants breached their express and implied warranties through which they

promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Powertrain Defect. Because the Powertrain Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Class Vehicles pursuant to the terms of the warranty. Instead, Hyundai has wrongfully shifted the cost of repairing the Powertrain Defect, or replacing the vehicle, to its customers. These costs are significant, and no reasonable consumer expects to incur such costs.

10.     Knowledge and information regarding the Powertrain Defect is in the exclusive and superior possession of Defendants and their network of authorized dealers, and was not provided to Plaintiff and members of the Classes, who could not have reasonably discovered the defect through due diligence.

11.     Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Powertrain Defect to increase profits and decrease costs by selling additional Class Vehicles and transferring the cost of the repair of the Powertrain Defect, or replacement of the vehicle, to owners and lessors of the Class Vehicles, including Plaintiff and members of the Classes.

12.     Plaintiff and members of the Classes assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., and unjust enrichment. As alleged herein, Defendants' wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiff and members of the Classes are entitled to damages and injunctive and declaratory relief.

13.     This action also asserts claims under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, on behalf of a New Jersey Subclass (defined below) for Defendants' "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement" of the Class Vehicles. N.J.S.A. § 56:8-2.

14.     This action also asserts claims under the California Consumers Legal Remedies Act, California Civil Code § 1750, *et. seq.* ("CLRA"), and violation of the Unfair Competition Law, California Business & Professions Code § 17200, on behalf of a California Subclass (defined below) for Defendants' representation that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

15.     Defendants knowingly omitted, concealed and suppressed material facts regarding the Powertrain Defect, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the Classes.

16.     As a direct result of Defendants' wrongful conduct, Plaintiff and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair of the Powertrain Defect; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C.

§ 1367.

18.      This Court also has jurisdiction over this action pursuant to the Class Action

Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of

interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there

are more than 100 members of the Classes, members of the Classes (as defined below) are

citizens of states different from Defendants, and greater than two-thirds of the members of the

Classes reside in states other than the states in which Defendant is a citizen.

19.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c)

because HMA is incorporated in California, and Defendants have marketed, advertised, sold,

and/or leased the Class Vehicles within this District through numerous dealers doing business

in the District. Defendants' actions have caused harm to Plaintiff, as well as tens of thousands

of Class members residing in California. Additionally, HMA has its headquarters in this

District. Accordingly, Defendants have sufficient contacts with this District to subject

Defendants to personal jurisdiction in the District and venue is proper.

## PARTIES

### Plaintiff

20.      Plaintiff Jan Schechter is a citizen of the State of New Jersey and resides in

Ocean, New Jersey. In or around October 2016, Plaintiff leased a 2017 Hyundai Santa Fe Sport

2.4 AWD from a Hyundai-authorized dealer, Circle Auto Group in Shrewsbury, New Jersey,

for personal or household use.

21.      Unbeknownst to Plaintiff at the time of leasing the Santa Fe, Plaintiff's vehicle

contained the Powertrain Defect.

22.      After leasing the vehicle, Plaintiff began to experience powertrain issues,

6

specifically issues regarding his Santa Fe losing power while driving. These issues led Plaintiff

to seek service for his Santa Fe at Circle Auto Group on or around July 5, 2018. Plaintiff

reported to the dealership that the "vehicle loses power while driving. You can hit the gas the

RPMS will go high and [the] vehicle will not move." The Hyundai-authorized dealer failed to

remediate the issue. Plaintiff took his vehicle back to the dealer for a second time on or around

July 11, 2018 complaining of similar issues. Plaintiff noted that the delay in acceleration lasts

five to six seconds before the vehicle finally accelerates. Again, the Hyundai-authorized dealer

failed to remediate the issue. Plaintiff subsequently reported the issue to HMA's corporate

headquarters, which also failed to remediate the issue.  At all times, Plaintiff used the vehicle as

intended.

23.     None of the advertisements reviewed or representations received by Plaintiff

and members of the Classes contained any disclosure relating to the Powertrain Defect in the

Class Vehicles. Had Defendants disclosed that the Powertrain Defect would require Plaintiff to

spend money to repair the vehicle and remediate the Powertrain Defect, Plaintiff would not

have leased his vehicle on the terms that he did, or he would have paid less for his vehicle.

24.     When Plaintiff and members of the Classes purchased or leased their Class

Vehicles, they reasonably relied on the expectation that the Class Vehicles were free from

defects such as the Powertrain Defect and/or would not pose an unavoidable safety risk.  Had

Defendants disclosed the Powertrain Defect, Plaintiff and members of the Classes would not

have purchased or leased the Class Vehicles or would have paid less for their vehicles.

25.     The Class Vehicles were operated in a reasonably foreseeable manner and as the

vehicles were intended to be used. Plaintiff and members of the Classes have suffered an

ascertainable loss as a result of Defendants' deceptive conduct, breach of warranty, common

law and statutory duties, and omissions and/or misrepresentations associated with the Powertrain Defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their respective vehicles.

26.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff and members of the Classes of the Powertrain Defect prior to the purchase or lease of the Class Vehicles.

**Defendants**

27.     Defendant HMA is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, California 92708.  HMA does business in California and throughout the United States. HMA is a wholly owned U.S. subsidiary of HMC, and it engages in business, including the advertising, marketing and sale of Hyundai automobiles nationwide. In California, HMA has its headquarters, a $30 million design and research center, and a large testing facility for its vehicles. As such, HMA has deep and substantial contacts with the state of California.

28.     HMC is a South Korean corporation with its principal place of business located at 12, Heolleung-ro, Seocho-gu, Seoul, South Korea. Defendant HMC is the parent corporation of HMA. HMC, through its various entities, designs, manufactures, markets, distributes and sells Hyundai automobiles in California and multiple other locations in the United States.

29.     HMA and HMC sell Hyundai vehicles through a network of dealerships that are the agents of HMA and HMC.

30.     There exists, and at all times herein existed, a unity of ownership between HMC, HMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

8

31.     Upon information and belief, Defendant HMC communicates with Defendant HMA concerning virtually all aspects of the Hyundai products it distributes within the United States.

32.     Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

33.     At all relevant times, HMA acted as an authorized agent, representative, servant, employee and/or alter ego of HMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Hyundai vehicles in the United States, including substantial activities that occurred within this jurisdiction.

**34.**     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Hyundai brand name throughout the United States. Defendants and/or their agents designed and manufactured the Class Vehicles. Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets and information, advertisements, and other promotional materials relating to the Class Vehicles.

## FACTUAL ALLEGATIONS

**A.     The Powertrain Defect**

35.     Defendants are major manufacturers of vehicles sold under the Hyundai brand throughout the United States. Defendants designed, manufactured, imported, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide. Upon information and belief, Hyundai has sold, directly or indirectly through dealers and other retail outlets, hundreds of thousands of Class Vehicles in California, New Jersey and nationwide. Plaintiff and members of the Classes purchased, leased, and/or own Class Vehicles, and have experienced the Powertrain Defect.

36.     The Powertrain Defect causes the Class Vehicles' powertrain systems to unexpectedly malfunction by a delayed or failed acceleration response, loss of power, rough shifting, or other related issues. The Powertrain Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because the Powertrain Defect severely impacts a driver's ability to accelerate as expected under normal driving conditions and maintain an appropriate speed based on traffic flow.

**B.     Hyundai's Knowledge of the Powertrain Defect**

37.     Plaintiff reported these powertrain issues to HMA on two separate occasions. Plaintiff brought his 2017 Hyundai Santa Fe Sport to a Hyundai-authorized dealer for service, first on or around July 5, 2018, and again on or around July 11, 2018. On or around July 5, 2018, Plaintiff reported to the dealership that the "vehicle loses power while driving. You can hit the gas the RPMS will go high and [the] vehicle will not move." The Hyundai-authorized dealer failed to remediate the issue. Plaintiff took his vehicle back to the dealer on or around

10

July 11, 2018. Plaintiff reported similar issues. Plaintiff noted that the delay in acceleration lasts five to six seconds before the vehicle finally accelerates. Again, the Hyundai-authorized dealer failed to remediate the issue.

38.   Plaintiff subsequently reported the issue to HMA's corporate headquarters, which also failed to remediate the issue.

39.   It is clear from Plaintiff's actions alone that HMA is on notice of the Powertrain Defect and has failed to act to remediate the issue in any meaningful way, such as to make Plaintiff's vehicle safe for its intended purpose.

40.   Plaintiff is also informed and believes, and based thereon alleges, that Hyundai became aware of the Powertrain Defect through sources not available to Plaintiff and members of the Classes, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Hyundai's network of dealers and directly to Hyundai, aggregate warranty data compiled from Hyundai's network of dealers, testing conducted by Hyundai in response to consumer complaints, and repair order and parts data received by Hyundai from Hyundai's network of dealers.

41.   HMA, and by extension HMC (as HMA was acting as its agent and alter ego), had and has a duty to fully disclose the true nature of the Powertrain Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Powertrain Defect poses an unreasonable safety hazard; because Hyundai had and has exclusive knowledge or access to material facts about the Class Vehicles' powertrain systems that were and are not known to or reasonably discoverable by Plaintiff and the other members of the Classes; and because Hyundai has actively concealed the Powertrain Defect from its customers.

42.     Numerous purchasers and lessees of the Class Vehicles have experienced the Powertrain Defect. The following example complaints filed by consumers with the National Highway Transportation Safety Authority ("NHTSA") and posted on the Internet demonstrate that the Defect is widespread and dangerous:[1]

- NHTSA Complaint (2017 Santa Fe Sport, incident date March 5, 2018): WHEN MAKING A LEFT OR RIGHT 90 DEGREES TURN FROM A STOPPED POSITION EXITING A DRIVEWAY OR FROM A STOP SIGN ON SMOOTH SURFACED ROADS, UPON ACCELERATION, AT THE MIDPOINT OF THE TURN THE FORWARD MOMENTUM STARTS TO LAG AND PRESSING THE GAS PEDDLE RESULTS IN WHAT FEELS LIKE A LOSS OF OR REDUCTION OF ENGINE POWER CAUSING POTENTIAL FOR NOT GETTING UP TO A SAFE SPEED TO MERGE SAFELY IN FRONT OF ONCOMING TRAFFIC. COMPLAINED TO THE HYUNDAI DEALER THAT STATED WAS A COMPUTER ISSUE HAVING TO DO WITH TRACTION CONTROL AND REQUIRES AN UPDATE WHICH IS NOT AVAILABLE AT THIS TIME.

- NHTSA Complaint (2017 Santa Fe Sport, incident date March 27, 2018): I HAVE A 2017 HYUNDAI SANTA FE SPORT 2.0 WITH 8500 MILES ON IT. SINCE I TOOK POSSESSION OF THIS CAR, I HAVE BEEN HAVING REPEATED OCCURRENCES OF ENGINE STALLING COUPLED WITH THE TRACTION CONTROL LIGHT GOING ON. THIS HAPPENS WHEN I MAKE EITHER LEFT OR RIGHT TURNS INTO TRAFFIC: ACCELERATION STALLS COMPLETELY FOR 2-3 SECONDS, AND THE TRACTION CONTROL WARNING LIGHT FLASHES. I CANNOT GET THE CAR TO ACCELERATE AT ALL, EVEN WITH THE PEDAL FULLY DEPRESSED TO THE FLOOR. THE ENGINE REVS EXTREMELY HARD, BUT THE CAR DOES NOT ACCELERATE. THIS HAPPENS ON COMPLETELY DRY PAVEMENT. THERE IS SOMETHING SERIOUSLY WRONG WITH THE 2017 HYUNDAI SANTA FE, AND SOMEONE IS GOING TO DIE AS A RESULT OF THIS PROBLEM. I HAVE COME CLOSE TO BEING REAR ENDED MULTIPLE TIMES, AND I HAVE NEARLY BEEN T-BONED WHEN TAKING A TURN IN FRONT OF ON-COMING TRAFFIC. I HAVE RESEARCHED THIS PROBLEM ONLINE, AND IT IS WIDE SPREAD WITH HUNDREDS OF IDENTICAL COMPLAINTS. THIS NEEDS TO BE ADDRESSED IMMEDIATELY BEFORE SOMEONE DIES IN THE 2017 HYUNDAI SANTA FE.

---

[1] https://www.nhtsa.gov/vehicle/2017/HYUNDAI/SANTA%252520FE%252520SP ORT/SUV/FWD#complaints (last visited August 31, 3018).   The spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

- NHTSA Complaint (2017 Santa Fe Sport, incident date May 1, 2017): THIS INITIALLY STARTED AROUND 3K MILES. WE THOUGHT THE VEHICLE ADJUSTING TO OUR DRIVING PATTERNS; HOWEVER OVERTIME IT BECAME A CONSTANT PROBLEM. I CALLED THE SERVICE DEPT. & THEY'D NOT HEARD OF THIS OCCURRING. IT'S GETTING MUCH WORSE AND I'M AFRAID TO DRIVE IT. THE VEHICLE RANDOMLY AT NO SPECIFIC SPEED SEEMS TO EITHER GET STUCK IN A GEAR OR TRY TO STALL TURNING LEFT, RIGHT (DRY CONDITIONS) OR AS I'M ON THE HIGHWAY MOVING LANES; NO SPECIFIC MPH. (THIS IS A DRIVING DEATH MACHINE AND FOR SAFETY PURPOSES I REFUSE TO PUT OTHER LIVES AT RISK) THERE'S A 2-4 SEC. DELAY, FORCING ME TO PUNCH THE GAS (MY GRANDFATHER OR FATHER WOULD HAVE STATED; "SOUNDS LIKE SAWDUST IN YOUR ENGINE") TO GET MY VEHICLE TO MOVE; ULTIMATELY A NEAR MISS OF A FATAL INCIDENT ON TWO SEPARATE OCCASIONS AND BECOMING VERY CLOSE TO GETTING T-BONED DUE TO THIS DANGEROUSLY "UNPREDICTABLE & EXTREMELY UNSAFE" VEHICLE. MY HUSBAND WAS FED UP AND TOOK THE VEHICLE INTO THE DEALERSHIP.WE PROVIDED DETAILED EXPLANATIONS OF OUR EXPERIENCES. YESTERDAY RECEIVED BACK FROM SERVICE TECH OUR INVOICE OF SERVICE WORK AND THEY STATE NO PROBLEMS; & UPDATE CAUSE TO RESOLUTION: TSB 17-BR0002 TCS UPDATE. IN NORMAL DRIVING CONDITIONS FROM 5 MPH TO 20MPH THE RPMS SHOULDN'T SUDDENLY INCREASE TO 5K WITHOUT FORWARD MOTION. THIS OCCURS IN NORMAL, ECO, AND SPORT AT SPORADIC TIMES. MY VEHICLE HAS 10,223 MILES THIS MORNING.I SPOKE WITH HYUNDAIUSA & INQUIRED OF A BUYBACK FOR VEHICLE CONSIDERING THE SERIOUSNESS OF THE VEHICLE'S SAFETY AND BECAUSE THE SERVICE TECHNICIAN STATED THERE'S NO FIX NOW OR IN THE NEAR FUTURE. AN ENGINEER FROM HYUNDAI CORP WOULD HAVE TO COME AND THERE'S NO IDEA WHEN (?). SO I RESPECTFULLY REQUEST AN INVESTIGATION INTO THE SERIOUSNESS OF THIS SAFETY. IF THERE'S ANY POTENTIAL OF PREVENTING LOST LIVES OF CHILDREN AND BABIES, PLEASE HELP.

- NHTSA Complaint (2017 Santa Fe Sport, incident date February 23, 2018): WHILE TURNING LEFT FROM A STOP ONTO A STATE HIGHWAY IN NORTHERN CALIFORNIA ALL ACCELERATIVE CAPABILITY WAS LOST WHEN THE VEHICLE CROSSED A SET OF RAILROAD TRACKS AT AN ESTIMATED 5 MPH, MID-WAY THROUGH THE TURN. THE AWD VEHICLE IS EQUIPPED WITH A 2.4L NORMALLY ASPIRATED ENGINE. THE VEHICLE WAS IN THE 'ECO' DRIVING MODE AND THE AUTOMATIC TRANSMISSION WAS IN THE 'D' RANGE. ATTEMPTS TO ADD POWER VIA THE ACCELERATOR PEDAL WERE MET WITH NO INCREASE IN ENGINE RPM AND, CONSEQUENTLY, NO INCREASE IN VEHICLE SPEED. THE CONDITION PERSISTED FOR 10-12 SECONDS, DURING WHICH TIME THE VEHICLE TRAVELED ONLY 75-90 FEET WITH THE ACCELERATOR PEDAL NEARLY 'FLOORED.' THERE WAS NO SHOULDER AND ONLY ONE LANE IN EACH DIRECTION, WHICH PRECLUDED MOVING THE VEHICLE TO A PLACE OF RELATIVE SAFETY.

THE WEATHER CONDITIONS WERE SUNNY AND CLEAR, AND THE TEMPERATURE WAS 55F. THE ROADWAY SURFACE WAS CLEAN DRY, AND FREE OF LOOSE MATERIAL OR CONTAMINANTS. THE INCIDENT OCCURRED ON A TANGENT SECTION OF HIGHWAY WITH NO GRADE AND A CROWN SLOPE OF APPROXIMATELY 2-PERCENT.

- NHTSA Complaint (2017 Santa Fe Sport, incident date February 19, 2018): SEVERE HESITATION OCCURS WHEN TRYING TO ACCELERATE FORM A STOP. HESITATION OCCURS INTERMITTENTLY AND HAPPENS WHEN TURNING RIGHT OR LEFT. MORE LIKELY TO HAPPEN IF THE ROAD SURFACE THAT THE VEHICLE IS TURNING ON TO IS ROUGH. THE VEHICLE WILL BEGIN TO ACCELERATE AND THEN LOSE ACCELERATION. ALTHOUGH PRESSING THE ACCELERATOR THE CAR DOES NOT SPEED UP EVEN THOUGH THE ENGINE REVS UP. AFTER ABOUT 3 SECONDS THE VEHICLE THEN RESPONDS AND BEGINS TO ACCELERATE. SITUATION MAY OCCUR 3 OR 4 TIMES A WEEK. THIS IS A SAFETY CONCERN BECAUSE I HAVE ALMOST BEEN HIT FROM BEHIND BECAUSE THE VEHICLE SLOWS DOWN WITHOUT WARNING.

- NHTSA Complaint (2017 Santa Fe Sport, incident date December 4, 2017): STARTING FROM A DEAD STOP OR AT LOW SPEEDS THIS VEHICLE HESITATES TO GO FOR AT LEAST 3-4 SECONDS MAKING IT UNSAFE IF ANOTHER VEHICLE IS COMING AT YOU. WHEN TURNING FROM A DEAD STOP THE ANTI SLIP LIGHT COMES ON WHEN THIS OCCURS, THIS HAS HAPPENED DURING DRY WEATHER. THIS OCCURS MOST FREQUENTLY IN EITHER ECO OR REGULAR DRIVING MODE, NOT SO MUCH WITH SPORT MODE. I DON'T LIKE DRIVING IN SPORT MODE TOO MUCH AS IT WASTES FUEL. I'VE NOTED A WHOLE LOT OF COMPLAINTS OF THIS ISSUE AND FEEL THAT HYUNDAI NEEDS TO DO SOMETHING ABOUT THIS, BEFORE AN ACCIDENT OCCURS! WE LEASED THIS VEHICLE IN DEC 2016 AND IT HAS LESS THAN 9000 MILES ON IT AS OF THIS DEC 2017.

- NHTSA Complaint (2017 Santa Fe Sport, incident date May 29, 2017): I PURCHASED VEHICLE 5/25/17. NOTICED THAT SOMETIMES A DELAYED ACCELERATION FROM A STOP. IT HAS GOTTEN MUCH MORE FREQUENT AND IS A PROBLEM IN TRAFFIC OR MAKING A TURN. HAD COUPLE OF SCARY MOMENTS. I HAVE CONTACTED THE DEALER SEVERAL TIMES TO SCHEDULE AN APPOINTMENT, BUT NO ONE CALLS ME BACK AND GETTING VERY FRUSTRATED AS THIS IS A SAFETY ISSUE. I LIVE 30 MILES FROM THE DEALER SO AM GOING TO HAVE TO MAKE A SPECIAL TRIP THERE.

- NHTSA Complaint (2017 Santa Fe Sport, incident date April 10, 2017): VEHICLE HESITATES FOR A SECOND OR TWO WHEN ACCELERATING, BOTH FROM A FULLY STOPPED POSITION, OR WHILE DRIVING AT LOW SPEEDS. DID NOT TEST HIGH SPEEDS. THIS CAN BE A SAFETY CONCERN WHEN MERGING INTO TRAFFIC, ESPECIALLY ON A HIGHWAY. DEALER SERVICE

SAID THEY COULD NOT REPRODUCE THE ISSUE, BUT IT IS VERY REAL, AND VERY SCARY. I HAD DOCUMENTED THIS ISSUE SEVERAL TIMES WITH HYUNDAI SUPPORT BUT THEY JUST KEEP CLOSING THE CASE WITHOUT ANY ACTION.

- NHTSA Complaint (2017 Santa Fe Sport, incident date October 7, 2016): MY 2017 HYUNDAI SANTA FE SPORT 2.0T ULTIMATE HESITATES STARTING FROM A STOP ESPECIALLY ON TURNS, TO THE POINT THAT IT CAN BE DANGEROUS, AS IT MAY TAKE SEVERAL SECONDS BEFORE IT WILL FULLY ACCELERATE AND I CAN AVOID ANY ONCOMING TRAFFIC. IT SEEMS MORE PRONOUNCED IN REGULAR AND ECO MODE THAN SPORT MODE. THE ANTI-SKID TRACTION LIGHT USUALLY GOES ON WHEN IT IS HAPPENING. THIS OCCURS AT SLOW SPEED. WHEN I TOOK THE CAR INTO THE DEALER, AND IT WAS CHECKED BY A FACTORY REP WHO WAS THERE THAT DAY, THEY TOLD ME IT WAS JUST THE WAY THE CAR WORKS AND IT IS THE AUTOMATIC ANTI-SKID TRACTION CONTROL WORKING.I HAVE BEEN JUST VERY CAREFUL NOT TO TURN WITHOUT A LOT OF SPACE FROM ANY ONCOMING CARS AND I TRY TO USE SPORT MODE TO LESSEN THE OCCURRENCES. THIS OF COURSE REDUCES FUEL ECONOMY. I HAVE NOW SEEN ONLINE REPORTS BY MANY OTHER OWNERS WITH THE SAME PROBLEM AND REALIZE IT IS DEFINITELY NOT NORMAL AND NEEDS TO BE CORRECTED. I HEARD THERE MAY NOW BE A TECHNICAL SERVICE BULLETIN ON THIS.

- NHTSA Complaint (2017 Santa Fe Sport, incident date July 5, 2017): 2017 SANTA FE SPORT 2.0T ULTIMATE AWD - HESITATION OCCURS WHEN ACCELERATING FROM LOW SPEEDS, MOST FREQUENTLY OBSERVED WHEN MAKING TURNS. STEPPING ON THE ACCELERATOR CAUSES THE TRACTION CONTROL LIGHT TO BLINK AND THE ENGINE TO EFFECTIVELY STALL OUT FOR A FEW SECONDS. WHEN THE THROTTLE DOES ENGAGE AFTER THE HESITATION, IT IS IN A VIOLENT MANNER. THIS HAPPENS MORE FREQUENTLY THAN NOT, AND IS INCREDIBLY DANGEROUS. I'VE OWNED THIS VEHICLE FOR OVER A YEAR AND HAVE 20,000+ MILES ON IT. THIS IS A REOCCURRING ISSUE. HAD I BEEN AWARE OF THIS SITE, I WOULD'VE FILED A COMPLAINT IMMEDIATELY.

- NHTSA Complaint (2017 Santa Fe Sport, incident date June 18, 2017): THERE IS SOMETIMES HESITATION AFTER COMING TO A STOP. THIS IS ESPECIALLY FRIGHTENING AT BUSY INTERSECTIONS. I PUSH ON THE GAS AND THE CAR DOES NOT MOVE. IT HAS OCCURRED AT LEAST 20 TIMES, BUT IT HAPPENED YESTERDAY AFTERNOON AT A BUSY ROTARY. I HAVE SEEN MANY OTHER COMPLAINTS, BUT HYUNDAI HAS NO SOLUTION AS OF TODAY. I AM AFRAID THIS IS GOING TO CAUSE A SERIOUS ACCIDENT EVENTUALLY.

- NHTSA Complaint (2017 Santa Fe Sport, incident date April 18, 2017): WITHIN DAYS OF TAKING DELIVERY, THE VEHICLE WOULD TAKE 3-4 SECONDS

TO ACCELERATE FROM A STOP, AND WOULD NOT FULLY ACCELERATE UNTIL ALMOST 10 SECONDS LATER, CREATING A HUGE SAFETY ISSUES FOR TIMES WHEN SPEEDY ACCELERATION (AT INTERSECTIONS, CLOSE CALLS, ETC.) WAS PARAMOUNT. FROM THERE, THE INFOTAINMENT SYSTEM GLITCHED OUT AND WOULD NOT TURN ON UNTIL I RESTARTED THE CAR, AND IT HAD ISSUES WITH VOICE COMMANDS INTERMITTENTLY, DEFEATING THE PURPOSE OF A HANDS-FREE DEVICE (ONCE AGAIN CREATING MORE SAFETY CONCERNS). MOST REGULARLY, THE VEHICLE WOULD STRUGGLE SO BADLY TO ACCELERATE FROM 0-40, AND 50-60, AND WOULD REDLINE, CAUSING HUGE STRESS AND STRAIN ON THE VEHICLE'S POWER TRAIN. HYUNDAI TOLD ME "THIS IS NORMAL" WHICH IT IS NOT. THIS HAPPENED DAILY AT INTERSECTIONS, BACK ROADS, AND ON HIGHWAYS--IT DID NOT DISCRIMINATE. I HAD SEVERAL NEAR MISSES WHEN THE VEHICLE REFUSED TO ACCELERATE. IN FACT, JUST TODAY, I WENT TO ACCELERATE THROUGH A TURN AND HAD THE GAS PEDAL FLOORED BECAUSE IT WOULD NOT ACCELERATE PAST 10 MPH. IT TOOK A FULL 20 SECONDS TO GET UP TO SPEED. THIS HAS HAPPENED IN ALL DRIVING MODES: ECO, NORMAL, AND TURBO.

- NHTSA Complaint (2017 Santa Fe SUV,[2] incident date August 1, 2018): SEVERE HESITATION WHEN COMING OUT OF A SHARP TURN. ALSO HAPPENS UPON ACCELERATION AFTER A TRAFFIC LIGHT. HAPPENING MORE FREQUENTLY AS TIME GOES ON CURRENTLY 13K MILES ON VEHICLE. HAPPENS ALMOST EVERY DRIVING TRIP BUT PUT TODAYS DATE ON IT AS IT HAPPENED LAST TODAY 8/1/18.

- NHTSA Complaint (2017 Santa Fe SUV, incident date April 1, 2018): ACCELERATION ISSUES. ON AT LEAST TWO SEPARATE OCCASIONS, ACCELERATION FROM A STOP RESULTED IN THE CAR STAYING AT THE SAME SPEED. HAD TO REMOVE MY FOOT FROM THE GAS PEDAL AND REAPPLY SEVERAL TIMES TO GET IT MOVING. NORMALLY, APPLYING THROTTLE PUSHES INDIVIDUALS BACK ON THEIR SEATS. CAR WAS TAKEN TO LAUREL HYUNDAI AND PER THE TECHS "UNABLE TO REPLICATE CUSTOMERS CONCERN ON ROAD TEST, NO CODES STORED OR PRESENT IN SYSTEM, NO TAB'S FOR CONCERN FOUND". LOOKING AT GETTING RID OF THIS VEHICLE DUE TO THIS SERIOUS SAFETY ISSUE.

- NHTSA Complaint (2017 Santa Fe SUV, incident date April 12, 2018): UPON MOVING AFTER COMPLETE STOP AND TURNING VEHICLE TO RIGHT OR LEFT, THERE IS HESITATION BEFORE THERE IS THROTTLE RESPONSE. IT OCCURS MORE OFTEN IF WHILE INITIALLY MAKING A TURN AND ANY SIZE BUMP OR POTHOLE IS ENCOUNTERED. A VERY DANGEROUS SITUATION AS THERE IS NO WAY TO MAKE AN AVOIDANCE MANEUVER IF NECESSARY SINCE THERE IS NO IMMEDIATE THROTTLE RESPONSE.

---

[2] https://www.nhtsa.gov/vehicle/2017/HYUNDAI/SANTA%252520FE/SUV/AWD# complaints (last visited August 31, 3018).

THE SAME SITUATION OCCURS WHEN AT SLOW SPEEDS A POTHOLE OR BUMP IS ENCOUNTERED DURING A TURN. AGAIN, DANGEROUS, BECAUSE WITHOUT A RESPONSIVE THROTTLE NO AVOIDANCE MANEUVER IS POSSIBLE. N.B. I PUT TODAY'S DATE BECAUSE THE "FIELD IS REQUIRED". IT OCCURS ON A DAILY BASIS, NONETHELESS.

- NHTSA Complaint (2017 Santa Fe Sport, incident date February 13, 2018): HE SANTA FE SPORT WAS PURCHASED IN JULY OF 2017. WHEN TAKING OFF FROM A REDLIGHT OR WHILE DRIVING AT A STEADY MOMENTUM ON THE ROAD, THE ACCELERATION DROPS SIGNIFICANTLY AND THE RPMS BEGIN TO REV UP HIGH, BOUNCING UP AND DOWN, BUT THE SANTA FE SPORT WILL STALL. WHILE ON THE HIGHWAY, THE ISSUE CONTINUES AND PANIC SENTS IN DUE TO THE CARS BEHIND US CAN REAR END THE SANTA FE SPORT. NO MATTER HOW FAR OR HARD THE GAS PEDAL IS PRESSED THE SANTA FE SPORT WILL STALL. ALL WHILE NO "ENGINE LIGHT" TURNS ON. TOOK THE SANTA FE SPORT FOR SERVICE TO THE DEALER OVER 6 TIMES BETWEEN 2017 AND 2018 AND ONLY AN EMS PART WAS REPLACED. THE PROBLEM CONTINUES MOSTLY IN VERY BAD TRAFFIC, AGAIN VERY CONCERNING FOR SAFETY. THE SANTA FE SPORT NEEDS TO BE TURNED OFF AND BACK ON IN ORDER FOR THE PROBLEM TO CEASE. NO MATTER WHAT DRIVE MODE IT IS IN (ECO; SPORT; NORMAL) THE ISSUE PERSISTS. WE PURCHASED A BRAND NEW 2017 SANTA FE SPORT RIGHT OFF THE LOT WHICH HAS BEEN PAID FOR AND IT IS UNFAIR THAT WE ARE STILL PAYING WHAT SEEMS LIKE OUR LIVES WE CONTINUE TO SPEND MORE WITH GAS, TOLLS, TRAVEL AND TIME FROM WORK TO TAKE THE SANTA FE SPORT IN FOR SERVICE AND WE DO NOT GET REFUNDED FOR THIS.

- NHTSA Complaint (2017 Santa Fe Limited Ultimate, incident date May 5, 2017): I PURCHASED A BRAND NEW 2017 HYUNDAI SANTA FE LIMITED ULTIMATE ON MAY 5 OF THIS YEAR, AND NOTICED A VERY HESITATION DURING THE DRIVE HOME FROM THE DEALERSHIP. I FIGURED IT WAS THE RESULT OF THE ENGINE BREAKING IN AND THAT I SHOULD JUST BE PATIENT. HOWEVER, IT CONTINUED...AND PROGRESSIVELY GOT WORSE. SPECIFICALLY, IT'S MOST PRONOUNCED WHEN I ACCELERATE FROM A DEAD STOP, ACCELERATE OUT OF A ROLLING STOP, ACCELERATE OUT OF A LEFT TURN, OR TRY TO MAKE A QUICK PASSING OR MERGING MANEUVER ON THE FREEWAY. IN ALL OF THESE CONDITIONS, THERE IS A 2 TO 3 SECOND DELAY BEFORE THE TRANSMISSION WILL SUDDENLY DOWNSHIFT AND THE VEHICLE WILL BLAST OFF. THIS IS REALLY DANGEROUS, BECAUSE I'VE HAD NEARLY A DOZEN INSTANCES OF BEING NEARLY REAR ENDED BECAUSE THE VEHICLE WON'T ACCELERATE QUICKLY ENOUGH. THE BEST WAY TO DESCRIBE IT IS TO SAY THAT IT'S LIKE TRYING TO ACCELERATE WITH A DIRTY, SEVERELY CLOGGED, 10-YEAR-OLD ENGINE AIR FILTER, AND THE INTAKE CAN'T GET ENOUGH AIR INTO THE ENGINE TO ACCELERATE AS IT SHOULD. I'VE BEEN TO OUR LOCAL DEALERSHIP SEVERAL TIMES ABOUT THIS ISSUE AND IN EVERY

INSTANCE WE'RE TOLD THAT THERE IS NOTHING THEY CAN DO UNTIL HYUNDAI RELEASES AN UPDATE OR A RECALL. BUT IN THE MEANTIME, I GUESS I'M SUPPOSED TO CONTINUE PLAYING RUSSIAN ROULETTE WITH MY LIFE. I'M AT NEARLY 9,000 MILES AND THE HESITATION IS STILL AS PRONOUNCED AS IT WAS IN THE BEGINNING. I'M TRYING REALLY HARD TO BE PATIENT AND NOT KEEP COMPLAINING TO OUR LOCAL SERVICE CENTER...BUT WE'VE HAD QUITE A FEW CLOSE CALLS, EXTREMELY CLOSE, AND I'M REALLY HOPING THAT HYUNDAI WILL PLEASE FIX THIS SOON! IN FACT, I JUST READ AN ARTICLE ABOUT HYUNDAI REPLACING THE ENGINES IN THE '17 SANTA FE'S BECAUSE OF A MANUFACTURING ISSUE WITH THE CRANKSHAFT PIN CAUSING THE EXACT SAME SYMPTOMS I'VE EXPERIENCED. SO I HOPE THAT I CAN PLEASE GET MY VEHICLE REPAIRED BEFORE I END UP IN A TERRIBLE ACCIDENT. THANKS!!

- NHTSA Complaint (2017 Santa Fe SUV, incident date September 12, 2017): HAD THIS SANTA FE FOR A LITTLE OVER A YEAR. I HAVE NOTICED SEVERAL INSTANCES OF NOT BEING ABLE TO ACCELERATE, OR GAIN SPEED, ESPECIALLY WHEN TURNING OR STARTING FROM A STOPPED POSITION, IT HESITATES TO START TO THE POINT OF ALMOST BEING HIT SEVERAL TIMES. I HAVE TAKEN IT TO DEALER MANY TIMES, AND THEY KEEP TELLING ME ITS THE WAY I AM DRIVING IT THAT THE ENGINE IS LIKE A STANDARD VEHICLE, BUT THAT DOESNT SEEM SAFE TO ME IF I AM TRYING TO START DRIVING AND IT WONT GO. WHEN IT DOES FINALLY DECIDE TO GO, IT TAKES OFF WAY TOO FAST AND IS LIKE, IT FINALLY DECIDES TO SHIFT INTO GEAR. ALSO WHILE IN PARK, ENGINE REVS TO 2500RPM FOR NO REASON OR IDOLS AT THAT RPM. IT FEELS LIKE THE ENGINE IS PULLING THE CAR FORWARD EVEN WHEN IT IS IN PARK I HAVE BEEN GIVEN THE RUN AROUND SO MANY TIMES, I AM TIRED OF IT. I'M NOT HAPPY TO SEE OTHERS HAVE THIS ISSUE, BUT I AM ALSO GLAD THAT OTHERS ARE EXPERIENCING THE SAME PROBLEMS.

- NHTSA Complaint (2017 Santa Fe Sport, incident date January 2, 2017): 2017 HYUNDAI SANTE FE SPORT AWD - PURCHASED IN OCT 2017. CURRENTLY HAVE 7525 MILES ON VEHICLE. I NOTICED ACCELERATION HESITATION IMMEDIATELY AFTER MAKING IN CITY TURNS (FROM BOTH STATIONARY AND IN MOTION TURNS) AS WELL AS WHEN GETTING ON HIGHWAY (IN MOTION). I AM RETIRED AND DO NOT DRIVE SANTE FE VERY OFTEN. THE PROBLEMS WITH ACCELERATION AFTER MAKING STATIONARY AND IN MOTION TURNS AND GETTING ON HIGHWAY HAS ALWAYS BEEN PRESENT SINCE DAY OF PURCHASE. I HAVE NOTICED THE PROBLEM HAS BECOME MORE PREVALENT AFTER TAKING A 1000 MILE ROAD TRIP THIS PAST AUGUST. THE ACCELERATION/ HESITATION AFTER TURNING IS MORE NOTICEABLE AND IS BECOMING CONCERNING BECAUSE I HAVE TO PRESS PETAL TO FLOOR TO GET THE SANTE FE TO ACCELERATE PROPERLY TO GET OUT OF WAY OF ON COMING TRAFFIC. HESITATIONS/ACCELERATION PROBLEMS OCCURS AFTER TURNING AND

WHEN ENTERING A FREEWAY. VERY POOR ENGINE PERFORMANCE
GIVEN THE VEHICLE COST OF $35,000. I OWNED A 2011 HYUNDAI SONTA
FOR 6 YEARS AND HAD THE SAME 2.4L ENGINE AND I NEVER
EXPERIENCED ANY ENGINE HESITATION LIKE I AM NOW WITH THE 2017
HYUNDAI SANTE FE SPORT AWD.

- NHTSA Complaint (2017 Santa Fe SUV, incident date July 20, 2017): MULTIPLE
  TIMES WHILE ATTEMPTING TO ACCELERATE THE RPMS WILL GO UP AND
  THE CAR DOES NOT MOVE. WHEN IT FINALLY GOES THE CAR WILL JERK
  AND THE RPMS FALL. THERE SEEMS TO BE A LOSS OF POWER WHEN THIS
  HAPPENS. ALSO SEEMS TO HAPPEN WHEN MAKING LEFT HAND TURNS
  ACROSS TRAFFIC, WHICH CAN BECOME DANGEROUS WITH ONCOMING
  CARS. THIS HAPPENS WHEN ATTEMPTING TO ACCELERATE.

- NHTSA Complaint (2017 Santa Fe SUV, incident date December 1, 2016): AT STOP
  WHEN TURNING RIGHT ARE LEFT AND ACCELERATING THE
  TRANSMISSION FAILS TO RESPOND AD THE CAR STALLS THEN WILL GO.
  IF SLOW TO SLOW SPEED AND ACCELERATED THE CAR WILL STALL
  BEFORE SHIFTING DOWN. THIS PROBLEM IS A SAFETY HAZARD. TOOK IT
  TO HYUANDI DEALER AT 3000 MILES WAS TOLD IT WAS NORMAL.

- NHTSA Complaint (2017 Santa Fe SUV, incident date June 22, 2017): SEVERE
  HESITATION WHEN TRYING TO ACCELERATE FROM A STOP. OCCURS
  INTERMITTENTLY AND HAPPENS WHEN TURNING RIGHT OR LEFT. MORE
  LIKELY TO HAPPEN IF ROAD SURFACE IS ROUGH THAT VEHICLE IS
  TURNING ONTO. THE VEHICLE WILL BEGIN TO ACCELERATE AND THEN
  LOSE ACCELERATION. ALTHOUGH PRESSING THE ACCELERATOR THE
  CAR DOES NOT SPEED UP EVEN THOUGH THE ENGINE REVS UP. AFTER
  ABOUT 3 OR 4 SECONDS THE VEHICLE THEN RESPONDS AND BEGINS TO
  ACCELERATE. THIS SITUATION DOES NOT OCCUR ALL THE TIME. IT MAY
  OCCUR 3 OR 4 TIMES IN A WEEK. THIS IS A SAFETY CONCERN BECAUSE I
  HAVE ALMOST BEEN HIT FROM BEHIND AS A RESULT OF THE VEHICLE
  NOT ACCELERATING.

- NHTSA Complaint (2017 Santa Fe SUV, incident date May 18, 2017): HAVE
  OWNED VEHICLE SINCE 12/16. APPROX 6 TIMES THERE HAS BEEN AN
  ACCELERATION PROBLEM WHEN CHANGING LANES OR TURNING. HAVE
  PUSHED THE GAS AND NOTHING HAPPENED - ENGINE DOES NOT REV OR
  RESPOND IN ANY WAY TO THE PRESSING OF THE GAS PEDAL. ITS LIKE
  THE CAR IS IN NEUTRAL AND THEN IT WILL JUST ALL OF A SUDDEN RE-
  ENGAGE. NO WARNING LIGHTS; NO INDICATION WHEN IT WILL HAPPEN.
  FILED COMPLAINT WITH HYUNDAI BUT THEY ARE UNABLE TO
  RECREATE THE PROBLEM AND/OR WILL NOT ASSIST UNTIL THEY CAN.
  DEALER HAD CAR FOR TWO WEEKS AND COULD NOT RECREATE SO
  HYUNDAI CLOSED OUR COMPLAINT. THE DATE ENTERED BELOW IS THE
  LAST TIME IT HAPPENED.

- NHTSA Complaint (2017 Santa Fe SUV, incident date January 2, 2017): HESITATION WHEN ENTERING TRAFFIC--HAIR RAISING EXPERIENCE-- THERE IS A 3 TO 4 SECOND STOP IN THE IN THE DRIVE TRAIN--THE CONTROL OF THE VEHICLE IS GONE-LEAVING ONE IN A PANIC MODE-- ALSO FEATHERING THE THROTTLE AT TIMES THERE IS NO RESPONSE-- TOOK SUV TO DEALER--THEY HOOKED UP A MONITOR AND WITH THE SERVICE MANAGER ON BOARD--- THE VEHCLE DID NOT RESPOND WHEN ACCELERATING--I AM TOLD DUE TO THE INFORMATION SENT BACK THROUGH MONITORING TO THE FACTORY THAT THE DEALERSHIP COULD NOT ASK FOR A BUY BACK--MY QUESTION IS HOW CAN A CO KEEP MAKING AND SELLING A UNIT THAT IS DEFECTIVE ?--THERE ARE HUNDREDS IF NOT MORE SIMILAR CASES ON LINE WITH THE SAME PROBLEMS--I WILL NOT DRIVE THIS VEHICLE ON ROAD--LIFE THREATENING--IF THE DEALERSHIP OR CO. DOES NOT AGREE TO BUY BACK I WILL BE FORCED TO TAKE FURTHER ACTION--STAND BY--CLASS ACTION MAY BE ON ITS WAY!!!MY CASE IS PENDING--AWAITING A RESPONSE BY EITHER DEALERSHIP OR CO.HOPE SOME ONE IS FAR MINDED AS TO THIS CONTINUING PROBLEM--AFTER ALL THIS IS THE U.S.A

- NHTSA Complaint (2017 Santa Fe SUV, incident date May 10, 2017): MY WIFE AND I HAVE HAD THE SAME INTERMITTENT PROBLEM SINCE ACQUIRING OUR 2017 SANTA FE BRAND NEW IN THE LATE SPRING OF 2016. WHEN TURNING FROM A STOP OR MAKING A VERY LOW SPEED TURN, AND THEN STARTING TO ACCELERATE, THE VEHICLE WILL STALL AND HESITATE, NOT MOVING OR "CATCHING" FOR 1-2 SECONDS. THIS HAS HAPPENED TO US APPROXIMATELY 6-8 TIMES. AND I'VE NEARLY BEEN REAR-ENDED ON SEVERAL OF THOSE OCCASIONS BECAUSE I WAS STALLED IN FRONT OF TRAFFIC BEHIND ME, ALSO TRYING TO MAKE THE TURN . ONCE I BARELY CLEARED THE INTERSECTION AT A LIGHT WHEN TURNING LEFT, HAVING THE SANTA FE STALL IN THE FACE OF ONCOMING TRAFFIC. I WAS NEARLY BROADSIDED BY SWIFT MOVING, ONCOMING TRAFFIC. SOMEONE IS GOING TO BE KILLED IF THIS PROBLEM IS NOT FULLY ADDRESSED AS SOON AS POSSIBLE. THE PUBLIC NEEDS PROTECTION AND A REMEDY. I CAN'T IMAGINE HYUNDAI IS UNAWARE OF THIS PROBLEM. I DID A QUICK GOOGLE SEARCH ON THE TOPIC, AND FOUND MANY, MANY POSTINGS REGARDING THIS EXACT SAME SET OF CIRCUMSTANCES. THERE WERE HYUNDAI MESSAGE BOARD COMPLAINTS, NHTSA COMPLAINTS, "LEMON" LAW FIRMS WHOA ARE ADVERTISING, SEEKING POTENTIAL 2017 SANTA FE OWNING CLIENTS, CITING THIS EXACT SET OF FACTS. IT'S DIFFICULT TO CONFIRM EXACT DATES, AS THIS HAS OCCURRED MULTIPLE TIMES. THE MOST RECENT TIME IT HAPPENED WAS IN EARLY MAY 2017, AT AN INTERSECTION LESS THAN A MILE FROM OUR HOME, MAKING A LEFT TURN FROM A STOP, WITH TRAFFIC LINED UP BEHIND US.

- NHTSA Complaint (2017 Santa Fe SUV, incident date April 28, 2017): THE
  VEHICLE FAILS TO ACCELERATE PAST THE INITIAL PRESS OF THE
  ACCELERATOR FROM A STOP LEAVING YOU COMMITTED IN TRAFFIC
  WITHOUT POWER FOR AROUND 2 SECONDS. STEPPING ON THE
  ACCELERATOR FAILS TO PRODUCE ANY POWER. JUST HAD THE VEHICLE
  LOOKED AT BY HYUNDAI WHO SAID THEY CAN FIND NOTHING WRONG.
  HYUNDAI ALSO SAID THERE ARE NO BULLETINS OR RECALLS. A SEARCH
  ON THE INTERNET SHOWS AN ALARMING AMOUNT OF CHATTER FROM
  OTHER OWNERS WITH THE SAME ISSUE. THERE IS UNDER 6000 MILES ON
  THE VEHICLE AND THIS HAS HAPPENED NUMEROUS TIMES,
  INTERMITTENTLY.

43.    Consumers have lodged similar complaints regarding the 2018 Hyundai Santa Fe:

- NHTSA Complaint (2018 Santa Fe Sport,[3] incident date January 29, 2018): I WAS
  SLOWLY CROSSING THREE TRAFFIC LANES AND TURNING LEFT. NO ONE
  WAS COMING FROM THE RIGHT, SO I APPLIED THE THROTTLE IN THE
  INSIDE LANE AND NOTHING HAPPENED. THE CAR STALLED WITHOUT
  WARNING. IT LEFT ME IN THE ROAD AND I WAS T-BONED IN THE
  DRIVER'S DOOR. THE OTHER DRIVER WAS INJURED, AND I HAVE HAD
  NECK ISSUES. WE COULD HAVE BOTH BEEN KILLED.  THE CAR HAD
  STALLED ONCE BEFORE. I HAD THE CAR TWO MONTHS WITH 2,400 MILES
  AND NOW IT WAS DECLARED TOTALED.  I REQUESTED THE BLACK BOX
  TO BE REMOVED AND REVIEWED. IT SHOWED THE SPEED AND TIMING
  MADE SENSE, BUT WHY DID THE CAR NOT TAKE OFF?  I GOT THE TICKET
  - "FAILURE TO YIELD FROM A PRIVATE DRIVE".  VERY, VERY
  FRIGHTENING. I DID NOT CALL THE HYUNDAI DEALER TO TELL HIM
  ABOUT THE CRASH UNTIL I HAD BOUGHT A NEW CAR OF ANOTHER
  BRAND. NO MORE HYUNDAI EVER.  THE BIOMECHANICAL ENGINEER
  WHO READ THE BLACK BOX REQUESTED I CONTACT YOU AFTER I
  FULLY EXPLAINED THE SITUATION. IF YOU NEED PDF FILES, I WILL
  HAVE TO FIGURE OUT HOW TO SEND THEM.

- NHTSA Complaint (2018 Santa Fe Sport, incident date January 3, 2018): NEW CAR
  WITH LESS THAN 400 MILES. I HAVE EXPERIENCED 7 EPISODES DURING
  THE MONTH OF JANUARY, WHERE THE CAR FAILS TO ACCELERATE
  WHEN TURNING ONTO A CITY STREET. THIS HAS HAPPENED WITH BOTH
  RIGHT OR LEFT TURNS TO ENTER TRAFFIC FROM A STOP SIGN. IT IS JUST
  UNRESPONSIVE FOR 1-2 SECONDS THEN ENGAGES WITH A BIT OF A JERK.
  VERY FRIGHTENING! I'VE HAD A FEELING OF PANIC NOT KNOWING IF
  THE CAR WILL MOVE FORWARD AS TRAFFIC IS APPROACHING. TOOK TO
  DEALERSHIP WHERE THEY CHECKED FOR DTCS AND COMPUTER
  UPDATES. SINCE THE PROBLEM IS UNPREDICTABLY INTERMITTENT, THE

---

[3] https://www.nhtsa.gov/vehicle/2018/HYUNDAI/SANTA%252520FE%25252
0SPORT/SUV/FWD#complaints (last visited August 31, 3018).

ROAD TEST DID NOT REPLICATE THE PROBLEM, AND THEY RETURNED THE CAR SAYING IT "DRIVES AS DESIGNED". THERE IS DEFINITELY A SAFETY ISSUE THAT SHOULD BE RESOLVED BEFORE RELEASING THE CAR. I HAVE LOST CONFIDENCE IN THE CAR I HAD HOPED WOULD BE SAFE AND PROBLEM FREE.

• NHTSA Complaint (2018 Santa Fe Sport, incident date May 17, 2018): DRIVING @60 W/CRUISE ON GOING DOWN A HILL ENGINE RPM'S SUDDENLY JUMP FROM 2000 TO ANYWHERE FROM 3000 TO 5000 RPM'S AND THE ONLY WAY TO STOP ENGINE RACING IS TO TAP THE BRAKES TO DISENGAGE CRUISE.  ALSO VEHICLE WILL NOT SPEED UP WHEN TURNING A CORNER, LIKE THE TRANSMISSION DOESN'T DOWN SHIFT.  THESE BOTH HAPPEN ALL THE TIME.  VEHICLE HAS LESS THAN 800 MILES.

44.     The above complaints represent only a sampling of otherwise voluminous complaints regarding the Powertrain Defect.

45.     Although Hyundai was aware of the widespread nature of the Powertrain Defect in the Class Vehicles, and that it posed grave safety risks, Hyundai has failed to take adequate steps to notify all Class Vehicle owners of the Powertrain Defect and provide relief.

46.     Plaintiff and members of the Classes have reported the Powertrain Defect in the Class Vehicles to Hyundai directly and through its dealers.

47.     Defendants are fully aware of the Powertrain Defect contained in the Class Vehicles.

48.     Nevertheless, Defendants actively concealed the existence and nature of the Powertrain Defect from Plaintiff and the other members of the Classes at the time of purchase or repair and thereafter.

49.     Specifically, Defendants: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Powertrain Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their powertrains were not in good working

order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact that the Class Vehicles and their powertrain systems were defective, despite the fact that Defendant learned of the Powertrain Defect before it placed the Class Vehicles in the stream of commerce.

50.     Defendants have deprived Plaintiff and members of the Classes of the benefit of their bargain, exposed them all to a dangerous safety defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Powertrain Defect contained in the Class Vehicles.

51.     Defendants have not recalled the Class Vehicles to repair the Powertrain Defect, have not offered to their customers a suitable repair or replacement of parts related to the Powertrain Defect free of charge, and have not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Powertrain Defect.

52.     Plaintiff and members of the Classes have not received the value for which they bargained when they purchased or leased the Class Vehicles.

53.     As a result of the Powertrain Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiff, expect and assume that a vehicle's powertrain system and the related components are not defective and will not malfunction while operating the vehicle as it is intended to be operated.

54.     Plaintiff and members of the Classes further expect and assume that Hyundai will not sell or lease vehicles with known safety defects, such as the Powertrain Defect, and will fully disclose any such defect to consumers prior to purchase, or offer a suitable, non-defective, repair.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

> All persons or entities in the United States that purchased, lease, leased, own or owned a 2017-2018 Hyundai Santa Fe (the "Nationwide Class" or "Class");

> All persons or entities in New Jersey that purchased, lease, leased, own or owned a 2017-2018 Hyundai Santa Fe (the "New Jersey Subclass"); and

> All persons or entities in California that purchased, lease, leased, own or owned a 2017-2018 Hyundai Santa Fe (the "California Subclass") (collectively, the "Classes").

56.     Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment

or amended complaint, or narrowed at class certification.

57.     Specifically excluded from the Classes are Defendants, Defendants' officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint ventures, or entities controlled by Defendants, and their

heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants

and/or Defendants' officers and/or directors, the judge assigned to this action, and any member

of the judge's immediate family.

58.     **Numerosity.**  The members of the proposed Classes are geographically dispersed

throughout the United States and are so numerous that individual joinder is impracticable.

Upon information and belief, Plaintiff reasonably estimates that there are hundreds of

thousands of individuals that are members of the proposed Classes.  Although the precise

number of proposed members is unknown to Plaintiff, the true number of members of each of

24

the Classes is known by Defendants.  More specifically, Hyundai and its network of authorized dealers maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member.  Thus, members of the proposed Classes may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

59.    **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Classes, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the Powertrain Defect. The representative Plaintiff, like all members of the Classes, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning powertrain system and related parts as a result of the Powertrain Defect. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Classes.

60.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Class Vehicles suffer from the Powertrain Defect;

(b)    Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c)    Whether the Powertrain Defect constitutes an unreasonable safety hazard;

(d)     Whether Defendants knew or should have known about the Powertrain Defect and, if so, how long Defendants have known of the Powertrain Defect;

(e)     Whether Defendants had a duty to disclose that the Class Vehicles suffer from the Powertrain Defect;

(f)     Whether Defendants breached their duty to disclose that the Class Vehicles suffer from the Powertrain Defect;

(g)     Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the Powertrain Defect;

(h)     Whether Defendants negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the Powertrain Defect;

(i)     Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Powertrain Defect;

(j)     Whether members of the Classes would have paid less for the Class Vehicles if Defendants, at the time of purchase or lease, disclosed that the vehicles suffered from the Powertrain Defect;

(k)     Whether Defendants are liable to Plaintiff and the Classes for breaching their express and/or implied warranties;

(l)     Whether Defendants are liable to Plaintiff and the Classes for violation of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and/or any other statutory duties under state laws;

(m)     Whether Defendants violated the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(n)     Whether Defendants violated the New Jersey Consumer Fraud Act. N.J.S.A. §§ 56:8-1, *et seq.*;

(o)     Whether Defendants are liable to Plaintiff and the Classes for unjust enrichment;

(p)     Whether Defendants actively concealed material facts from Plaintiff and members of the Classes in order to, *inter alia*, sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Powertrain Defect to Plaintiff and the Classes; and

(q)     Whether Plaintiff and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

26

61.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

62.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

63.    In the alternative, the Class may also be certified because:

(a)    the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the

27

Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Fraud

64.     Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

65.     Plaintiff brings this count on behalf of himself and the members of the Class and Subclasses.

66.     Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the powertrain system in the Class Vehicles is defective, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff and members of the Classes rely on Defendants' misrepresentations and omissions. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

67.     As a result of Defendants' failure to disclose to members of the Classes the material fact that the powertrain system in the Class Vehicles is defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Powertrain Defect or sell their vehicles at a substantial loss. The fact that the powertrain system in the Class Vehicles is defective is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Powertrain

28

Defect, and because Plaintiff and members of the Classes had a reasonable expectation that the vehicles would not suffer from the Powertrain Defect.

68.    The fact that the powertrain system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. Because of the Powertrain Defect, drivers may be unable to accelerate from a stop or maintain speed while changing lanes. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to properly accelerate out of a turn or merging onto a highway, and the general public is also at risk for being involved in an accident with a Class Vehicle that is unable to attain an appropriate speed. Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Powertrain Defect, or would have paid less for the Class Vehicles.

69.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Powertrain Defect would sell more Class Vehicles.

70.    Plaintiff is informed and believes, and based thereon alleges, that despite notice of the Powertrain Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Powertrain Defect.

29

71.     At minimum, Defendants knew about the Powertrain Defect by way of customer

complaints filed with affiliated dealerships and through the NHTSA, as extensively documented

above.  Hyundai also issued a TSB to dealers regarding this issue on or around November 1,

2017.  Despite repeated complaints from customers, Hyundai has failed to issue a recall with

regard to this issue or offer its customers any meaningful relief.  As such, Defendants acted

with malice, oppression and fraud. Plaintiff and members of the Classes reasonably relied upon

Defendants' knowing, affirmative and active false representations, concealment and omissions.

As a direct and proximate result of Defendants' false representations, omissions and active

concealment of material facts regarding the Powertrain Defect, Plaintiff and members of the

Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II
### Negligent Misrepresentation

72.     Plaintiff incorporates and realleges each preceding paragraph as though fully set

forth herein.

73.     Plaintiff brings this count on behalf of himself and the members of the Class and

Subclasses.

74.     Defendants owed a duty to disclose the Powertrain Defect and its corresponding

safety risk to Plaintiff and members of the Classes because Defendants possessed superior and

exclusive knowledge regarding the defect and the risks associated therewith.

75.     Plaintiff is informed and believes, and based thereon alleges, that despite notice of

the Powertrain Defect from, among other things, pre-production testing, numerous consumer

complaints, warranty data, and dealership repair orders, Defendant has not recalled the Class

Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free

30

of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Powertrain Defect.

76.    At minimum, Defendants knew about the Powertrain Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. Hyundai also issued a TSB to dealers regarding this issue on or around November 1, 2017.  Despite repeated complaints from customers, Hyundai has failed to issue a recall with regard to this issue or offer its customers any meaningful relief.

77.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles.

78.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the powertrain system installed in the Class Vehicles is defective, exposing drivers, occupants and members of the public to safety risks. As a direct result of Defendants' negligent conduct, members of the Classes have suffered actual damages.

79.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to members of the Classes the material fact that the powertrain system in the Class Vehicles is  defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Class Vehicles, or sell their vehicles at a substantial loss. The fact that the Class Vehicles suffer from the Powertrain Defect is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the powertrain system.

80.    The fact that the powertrain system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of

serious injury or death. Because of the Powertrain Defect, drivers may be unable to accelerate out of a turn or onto a highway, and may be unable to maintain speed while changing lanes, among other issues. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to accelerate out of turns and while merging onto a road, and because of inability to maintain an appropriate speed. The general public is also at risk for being involved in an accident with a Class Vehicle that is unable to accelerate to or maintain an appropriate speed. Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Powertrain Defect, or would have paid less for the Class Vehicles.

81.     Plaintiff and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts. As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Powertrain Defect, Plaintiff and members of the Nationwide Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT III
### Breach Of Express Warranty

82.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

83.     Plaintiff brings this count on behalf of himself and the Nationwide Class and Subclasses.

84.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff's and Class members' decisions to purchase or lease the Class Vehicles.

85.    Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

86.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

87.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

88.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, HMA offers a ten-year or 100,000-mile Powertrain Warranty to original owners, which "[c]overs repair or replacement of powertrain components (i.e., selected engine and transmission/transaxle components), originally manufactured or installed by Hyundai that are defective in material or factory workmanship, under normal use and maintenance." For all subsequent owners, the Powertrain Warranty is limited to five years, or 60,000 miles. Under warranties provided to the members of the Classes, Defendants promised to repair or replace defective powertrain components arising out of defects in materials and/or workmanship, such as the Powertrain Defect, at no cost to owners or lessors of the Class Vehicles.

89.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Classes purchased or leased their Class Vehicles.

90.     Despite the existence of the warranties, Defendants failed to inform Plaintiff and members of the Classes that the Class Vehicles contained the Powertrain Defect, and, thus, wrongfully transferred the costs of repair or replacement of the Powertrain Defect to Plaintiff and members of the Classes.

91.     Defendants have failed to provide Plaintiff or members of the Classes with a meaningful remedy for the Powertrain Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

92.     As described at length above, Defendants were on notice of the Powertrain Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties.  Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the Powertrain Defect and, on information and belief, have refused to repair or replace the Powertrain Defect free of charge despite the Powertrain Defect's existence at the time of sale or lease of the Class Vehicles.

93.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the members of the Classes have been damaged in an amount to be determined at trial.

94.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and the members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

95.     On August 15, 2018, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an express warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

## COUNT IV
### Breach Of Implied Warranty

96.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

97.     Plaintiff brings this count on behalf of himself and members of the Classes.

98.     Plaintiff and members of the Classes purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

99.     Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

100.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

101.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

102.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

35

103.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain the Powertrain Defect and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

104.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

## COUNT V
## Violation Of The Magnuson-Moss Warranty Act ("MMWA")

105.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

106.    Plaintiff brings this count on behalf of himself and the members of the Classes.

107.    Plaintiff satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

108.    Plaintiff and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

109.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

110.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

111.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

36

112.    Defendants provided Plaintiff and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, HMA offers a ten-year or 100,000-mile Powertrain Warranty to original owners, which "[c]overs repair or replacement of powertrain components (i.e., selected engine and transmission/transaxle components), originally manufactured or installed by Hyundai that are defective in material or factory workmanship, under normal use and maintenance." For all subsequent owners, the Powertrain Warranty is limited to five years, or 60,000 miles. Under warranties provided to members of the Classes, Defendants promised to repair or replace defective powertrain components arising out of defects in materials and/or workmanship, such as the Powertrain Defect, at no cost to owners or lessors of the Class Vehicles.

113.    Under warranties provided to members of the Classes, Defendants promised to repair or replace defective powertrain components arising out of defects in materials and/or workmanship, such as the Powertrain Defect, at no cost to owners or lessors of the Class Vehicles. However, Defendants have failed to provide owners with a remedy to the Powertrain Defect.

114.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

115.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Powertrain Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship. Through their issuance of a TSB to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Powertrain Defect.

116.    Plaintiff and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Classes, on the other hand. Nonetheless, privity is not required here because Plaintiff and each member of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessors of the Class Vehicles only.

117.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Powertrain Defect, but failed to remediate the same. Likewise, Defendants failed to disclose the Powertrain Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

118.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

119.    Plaintiff, individually and on behalf of members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT VI**
**Unjust Enrichment**

120.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

121.    Plaintiff brings this count on behalf of himself and the members of the Classes.

122.    Plaintiff and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles. Defendants were and should have been reasonably expected to provide Class Vehicles free from the Powertrain Defect.

123.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Powertrain Defect in the Class Vehicles.

124.    As a proximate result of Defendants' false representations, omissions and concealment of the Powertrain Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Classes. It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff and members of the Classes.

125.    Plaintiff and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

126.    Plaintiff and members of the Classes seek an order requiring Defendants' to disgorge their gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VII
### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

127.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

128.    Plaintiff Schechter brings this claim on behalf of himself and the members of the New Jersey Subclass.

129.    The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ." N.J.S.A. § 56:8-2.

130.    Plaintiff Schechter and members of the New Jersey Subclass are consumers who purchased or leased the Class Vehicles for personal, family, or household use.

131.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Powertrain Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or

grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Powertrain Defect and corresponding safety risk in violation of the NJCFA.

132.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Schechter and the Subclass. When Plaintiff Schechter and members of the New Jersey Subclass purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles' powertrain system would not pose an unavoidable safety risk. Had Defendants disclosed the Powertrain Defect, Plaintiff Schechter and members of the New Jersey Subclass would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

133.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Powertrain Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

134.    Plaintiff is informed and believes, and based thereon alleges, that despite notice of the Powertrain Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Powertrain Defect.

135.    At minimum, Defendants knew about the Powertrain Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. Hyundai also issued a TSB to dealers regarding this issue on or around November 1, 2017.  Despite repeated complaints from customers, Hyundai has failed to issue a recall with regard to this issue or offer its customers any meaningful relief.

41

136.    Defendants owed a duty to disclose the Powertrain Defect and its corresponding safety risk to Plaintiff Schechter and New Jersey Subclass members because Defendants possessed superior and exclusive knowledge regarding the Powertrain Defect and the risks associated therewith. Rather than disclose the defect, Defendants intentionally concealed the defect with the intent to mislead Plaintiff Schechter and the New Jersey Subclass members in order to sell additional Class Vehicles to Plaintiff Schechter and the New Jersey Subclass members.

137.    Defendants knew, or should have known, that the Powertrain Defect in the Class Vehicles could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

138.    Had Plaintiff Schechter and the New Jersey Subclass members known about the Powertrain Defect at the time of purchase, including the safety hazard posed by the Powertrain Defect, they would not have bought the Class Vehicles or would have paid much less for them.

139.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff Schechter and New Jersey Subclass members have suffered and continue to suffer harm as a result of the Powertrain Defect and/or actual damages in the amount of the cost to repair or replace the vehicle, and damages to be determined at trial. Plaintiff Schechter and New Jersey Subclass members have also suffered the ascertainable loss of the diminished value of their vehicles.

140.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff Schechter and the New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J.S.A. § 56:8-19.

141.   Plaintiff Schechter and the New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA. *See* N.J.S.A. § 56:8-19.

## COUNT VIII
### Violation Of California's Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA")

142.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

143.   Plaintiff Jan Schechter brings this claim on behalf of himself and members of the Class and California Subclass.

144.   HMA is a "person" as defined by California Civil Code § 1761(c).  HMC is a "person" as defined by California Civil Code § 1761(c).

145.   Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

146.   By failing to disclose and concealing the defective nature of the Class Vehicles' powertrains from Plaintiff and members of the Class and California Subclass, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

147.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

148.    Defendants knew that the Class Vehicles' powertrains suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

149.    Defendants were under a duty to Plaintiff and members of the Class and California Subclass to disclose the defective nature of the Class Vehicles' powertrains and/or the associated repair costs because: a) Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' powertrains; b) Plaintiff and members of the Class and California Subclass could not reasonably have been expected to learn or discover that their powertrains have a dangerous safety defect until after they purchased the Class Vehicles; and c) Defendants knew that Plaintiff and members of the Class and California Subclass could not reasonably have been expected to learn about or discover the Powertrain Defect.

150.    By failing to disclose the Powertrain Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

151.    The facts concealed or not disclosed by Defendants to Plaintiff and members of the Class and California Subclass are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff and members of the Class and California Subclass known that the Class Vehicles' powertrains were defective, they would not have purchased the Class Vehicles or would have paid less for them.

152.    Plaintiff and members of the Class and California Subclass are reasonable consumers who do not expect that their vehicles will suffer from a Powertrain Defect.  That is the reasonable and objective consumer expectation for vehicles and their powertrains.

44

153.    As a result of Defendants' misconduct, Plaintiff and members of the Class and California Subclass have been harmed and have suffered actual damages in that the Class Vehicles and their powertrains are defective and require repairs or replacement.

154.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and members of the Class and California Subclass have suffered and will continue to suffer actual damages.

155.    By a letter dated August 15, 2018, and sent via certified mail, Plaintiff provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code Section 1782(a) and demanded that Defendants rectify the problems associated with the behavior detailed above.  As of the filing of this Complaint, Defendants have failed to respond to Plaintiff's demands and have failed to give notice to all affected consumers, as required by California Civil Code Section 1782.

156.    Accordingly, Plaintiff and members of the Class and California Subclass seek an order enjoining the acts and practices described above.

157.    Plaintiff and members of the Class and California Subclass additionally seek actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under section 1780(a) of the CLRA pursuant to Civil Code Section 1782(d), due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## COUNT IX
### Violation Of California's Unfair Competition Law ("UCL")

158.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

159.    Plaintiff brings this cause of action on behalf of himself and members of the Class and California Subclass.

160.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

161.    Defendants knew that the Class Vehicles' powertrains suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

162.    In failing to disclose the Powertrain Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

163.    Defendants were under a duty to Plaintiff and members of the Class and California Subclass to disclose the defective nature of the Class Vehicles' powertrains because: a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' powertrains; b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' powertrains; and c) Defendants actively concealed the defective nature of the Class Vehicles' powertrains from Plaintiff and Class Members at the time of sale and thereafter.

164.    The facts concealed or not disclosed by Defendants to Plaintiff and members of the Class and California Subclass are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them.  Had Plaintiff and members of the Class and California

Subclass known that the Class Vehicles suffered from the Powertrain Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

165.   Defendants continued to conceal the defective nature of the Class Vehicles and their powertrains even after Plaintiff and members of the Class and California Subclass began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

166.   Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers.  Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

167.   Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

168.   Thus, by their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

169.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

170.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and members of the Class and California Subclass have suffered and will continue to suffer actual damages.

171.    Defendants have been unjustly enriched and should be required to make

restitution to Plaintiff and members of the Class and California Subclass pursuant to sections

17203 and 17204 of the Business & Professions Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,

respectfully requests that this Court enter judgment against Defendants and in favor of

Plaintiff and the Class and Subclasses, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Subclasses, and Plaintiff's counsel as counsel for the Class and Subclasses;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Powertrain Defect in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

D.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.    An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.    An order awarding any applicable statutory and civil penalties;

G.    A declaration that Defendants are required to engage in corrective advertising;

H.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.    An award of costs, expenses and attorneys' fees as permitted by law; and

J.    Such other or further relief as the Court may deem appropriate, just, and

48

equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  September 6, 2018                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____ */s/ Frederick J. Klorczyk III* _____
                    Frederick J. Klorczyk III

Frederick J. Klorczyk III
Joel D. Smith (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  fklorczyk@bursor.com
            jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Andrew Obergfell
888 Seventh Avenue
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  aobergfell@bursor.com

*Attorneys for Plaintiff*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

3       I, Frederick J. Klorczyk III, declare as follows:

4       1.      I am an attorney at law licensed to practice in the State of New Jersey and a member

of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiff

5
Jan Schechter in this action.  I have personal knowledge of the facts set forth in this declaration

6
and, if called as a witness, I could and would competently testify thereto under oath.

7
        2.      The Complaint filed in this action is filed in the proper place for trial under

8
California Civil Code Section 1780(d) because Defendant Hyundai Motor America does business

9
within this District and Plaintiff resides within this District.

10
        I declare under the penalty of perjury under the laws of the State of California and the

11
United States that the foregoing is true and correct and that this declaration was executed at Walnut

12
Creek, California on September 6, 2018.

13

14

15

16

17       _____
                 Frederick J. Klorczyk III

18

19

20

21

22

23

24

25

26

27

28