**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

|                                                      |    |                              |
|------------------------------------------------------|----|------------------------------|
|                                                      | :  |                              |
| JAN SCHECHTER, on behalf of himself and all          | :  |                              |
| others similarly situated,                           | :  |                              |
|                                                      | :  |                              |
| Plaintiff,                                           | :  | Civil Action No.: 18-13634 (FLW) |
| v.                                                   | :  |                              |
|                                                      | :  | **OPINION**                  |
| HYUNDAI MOTOR AMERICA and HYUNDAI                    | :  |                              |
| MOTOR COMPANY,                                       | :  |                              |
|                                                      | :  |                              |
| Defendants.                                          | :  |                              |
|                                                      | :  |                              |

---

**WOLFSON, Chief Judge**:

      Before the Court is a Motion to dismiss filed by Defendants Hyundai Motor America ("HMA") and Hyundai Motor Company ("HMC") (cumulatively, "Defendants"). Plaintiff Jan Schechter ("Plaintiff") brings this putative class action, alleging that Defendants fraudulently concealed the fact that certain of its vehicles contained a defective powertrain component. Plaintiff asserts the following claims: fraud (Count 1); negligent misrepresentation (Count 2); breach of the express warranty (Count 3); breach of the implied warranty (Count 4); violation of the Magnuson-Moss Warranty Act (Count 5); unjust enrichment (Count 6); violation of the New Jersey Consumer Fraud Act (Count 7); violation of California's Consumer Legal Remedies Act (Count 8); and violation of California's Unfair Competition Law (Count 9). For the reasons expressed herein, Defendants' Motion to dismiss is granted as to all claims, with the exception of the breach of the express and implied warranties. Plaintiff is given leave to amend the Complaint only as to his NJCFA and negligent misrepresentation claims within 20 days from the date of this Opinion.

# I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise noted, the facts are drawn from Plaintiff's Complaint and are assumed to be true for the purpose of this Motion. HMC is a South Korean corporation and, through its various entities, it designs, manufactures, markets, distributes, and sells Hyundai automobiles throughout the United States. Complaint ("Compl."), ¶ 28. HMA, a wholly owned subsidiary of HMC, is a California corporation that advertises, markets, and sells Hyundai automobiles nationwide. *Id*. at ¶ 27. Plaintiff is a New Jersey resident who leased a 2017 Hyundai Sante Fe Sport 2.4 AWD from an authorized Hyundai dealer, Circle Auto Group in New Jersey, in or around October 2016. *Id*. at ¶ 20.

According to the Complaint, the 2017-2018 Sante Fe SUV and Sante Fe Sport SUV, offered in a turbo and non-turbo model (the "Class Vehicles"), suffer from a defective powertrain (the "Powertrain Defect"). *Id*. at ¶ 1. Plaintiff alleges that the Powertrain Defect presents a "safety hazard that renders the Class Vehicle unreasonably dangerous to consumers," causing "delayed or failed acceleration response, loss of power, rough shifting," "jerking, lurching, and/or engine revving" that is "associated with the delayed acceleration." *Id*. at ¶¶ 1, 5, 36. As alleged, "many Class Vehicle owners have reported a significant delay in the Class Vehicle's response while attempting to accelerate from a stop and/or while cruising in situations that require the ability to accelerate rapidly," such as "merging on the highway, changing lanes, etc." *Id*. at ¶ 5.

Plaintiff alleges that Defendants "possessed superior and exclusive knowledge" of the Powertrain Defect at the time that the Class Vehicles were sold or leased. *Id*. at ¶¶ 6, 10, 133, 136. According to Plaintiff, Defendants were aware of the Powertrain Defect, on the basis of "customer complaints filed with affiliated dealerships" and with the National Highway Transportation Safety Authority ("NHTSA"). *Id*. ¶¶ 40, 42 43, 135. As to the latter, Plaintiff

includes more than 29 complaints in his pleadings, which were posted on the NHTSA's website by Class Vehicle owners from October 7, 2016 to August 1, 2018. *Id.* at ¶¶ 42-43. In addition, Plaintiff alleges that Hyundai issued a Technical Service Bulletin ("TSB") on November 1, 2017, which applied to the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3L vehicles. *Id.* at ¶ 135. The TSB stated: "[t]his bulletin describes the procedure to update the Traction Control System (TCS) logic on some 2017-2018MY Santa Fe Sport (AN) 2.0T and Santa Fe (NC) 3.3L vehicles. This update helps reduce unnecessary TCS engagement during low speed / dry road acceleration." *Id.*

Notwithstanding their knowledge, Plaintiff alleges that Defendants "wrongfully and intentionally concealed" the "true nature and extent of the" Powertrain Defect from Class Vehicle owners at the time of sale. *Id.* at ¶¶ 1, 6. Indeed, Defendants "affirmatively concealed" the Powertrain Defect, as Plaintiff alleges, in order to "increase profits and decrease costs . . . and transfer[] the cost of the repair of the Powertrain Defect . . . to owners and lessors of the Class Vehicle[.]" *Id.* at ¶ 11. Plaintiff avers that the Class Vehicles are covered by a comprehensive ten year or 100,000 mile, or five-year or 60,000 mile, powertrain warranty, depending on whether the vehicle is owned by an original or subsequent party. *Id.* at ¶ 8. However, according to Plaintiff, Defendants have not complied with their obligations pursuant to the powertrain warranty by either refusing or failing to repair and replace defective powertrain components. *Id.* at ¶¶ 8-10.

As to the Complaint's specific allegations concerning Plaintiff, it alleges that Plaintiff leased a 2017 Hyundai Sante Fe Sport 2.4 in October 2016, which contained the Powertrain Defect at the time of sale. *Id.* at ¶¶ 20-21. However, at some point thereafter, Plaintiff began to experience "powertrain issues," and he brought his vehicle to an authorized Hyundai dealer for

servicing on July 5, 2018 and July 11, 2018. *Id*. at ¶ 22. On these occasions, Plaintiff provided the following explanation with respect to his vehicle's problems: "the vehicle loses power while driving . . . [y]ou can hit the gas the RPMS will go high and [the] vehicle will not move . . . the delay in acceleration lasts five to six seconds before the vehicle finally accelerates." *Id*. Nevertheless, the authorized Hyundai dealer allegedly "failed to remediate the issue," prompting Plaintiff to ultimately report his defective powertrain to "HMA's corporate headquarters" on an unspecified date. *Id*. at ¶ 38. However, Plaintiff alleges that those efforts, too, were unsuccessful. *Id.* at ¶ 39.

On September 6, 2018, Plaintiff filed the instant putative class action on the behalf of a nationwide class of consumers, and two subclasses of New Jersey and California consumers, "that purchased, leased, own or owned a 2017-2018 Hyundai Santa Fe." Plaintiff brings New Jersey and California state law claims, and a claim under the Magnuson-Moss Warranty Act. Now, Defendants move to dismiss Plaintiff's Complaint in its entirety, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (citations and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (citations, quotations and brackets omitted).

## III.   ANALAYSIS

### A.   STANDING

In his Complaint, Plaintiff seeks to represent a nationwide class, as well as two sub-classes of consumers in New Jersey and California, under their respective state's laws. Confusingly, however, Plaintiff also asserts claims under New Jersey and California law with respect to the nationwide class, without having performed the requisite choice of law analysis for the purpose of determining which state has the most significant relationship to the nationwide class claims. In that regard, the claims of the nationwide class are either governed by New Jersey or California law, not both. Although a choice of law analysis will ultimately be required to compare and contrast the laws of New Jersey and California pursuant to the relevant Restatement section, such an inquiry cannot be performed on this motion. While Defendants did not conduct a choice of law analysis in their moving brief, they rather raised the issue, for the first time, in their reply papers, such that Plaintiff was unable to provide a response. *See, Krys v. Aaron*, 112 F. Supp. 3d 181, 197 (D.N.J. 2015) ("Defendants . . . may not raise new arguments in a reply.") Without the benefit of Plaintiff's arguments, the Court cannot, at this stage of the litigation, render a finding as to which state's law applies to the nationwide class.

Nevertheless, Plaintiff is well-advised that the nationwide claims under California law may not survive a rigorous choice of law analysis. My reasoning in *Chernus v. Logitech, Inc.*, which Plaintiff has cited in his papers, discusses this point:

> [I]in examining which law applies, [*i.e.*, California or New Jersey, the plaintiff] would have to demonstrate, first, that California law has the most significant relationship to his individual claims . . . . [I]t would be a tough road to hoe for [the plaintiff] to show that California's state law applies in the context of his fraud claims—which arose in New Jersey—particularly since a plaintiff's home state would have an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.

*Chernus*, No. 17-673, 2018 U.S. Dist. Lexis 70784, at *28 (D.N.J. April 27, 2018) (citing *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 211 (3d Cir. 2013)). Accordingly, in the event that California law does not govern, Plaintiff cannot assert California claims on behalf of the nationwide class. Likewise, Plaintiff may not assert New Jersey state law claims on behalf of the nationwide class, because those out-of-state putative class members did not suffer any injuries in New Jersey. Plaintiff is directed to submit supplemental briefing on the issue of choice of law by no later than August 23, 2019. Defendant may respond by September 6, 2019.

With respect to the two sub-classes of New Jersey and California consumers, the parties do not dispute that Plaintiff, a New Jersey resident, has standing to represent the former group. However, Plaintiff may not represent the sub-class of California consumers. I will now turn to that discussion.

   i.    *California Sub-class*

To demonstrate standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (citations and quotations omitted). Relevant here, "[t]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561. The longstanding basic rule of third party standing is that "in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400 (1991). Moreover, "[t]he standing inquiry does not change in the context of a putative class action . . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class

action." *Koronthaly v. L'Oreal*, No. 07-CV-5588, 2008 U.S. Dist. LEXIS 59024, at *4 (D.N.J. July 29, 2008) (quotations omitted).

Here, Plaintiff asserts claims under the laws of California, and seeks to represent that state's citizens, where he neither resides nor suffered any injury. Plaintiff, however, cannot do so, as he lacks standing to assert these claims. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010) ("Cooper, who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute."); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014) ("A Plaintiff may bring state law claims only under the law of the state where he or she lived and the alleged injury occurred."); *McGuire v. BMW of N. Am., LLC,* No. 13-7356, 2014 U.S. Dist. LEXIS 77009, at *17 (D.N.J. Jun. 6, 2014); *Cooper v. Medimetriks Pharms., Inc.*, No. 18-11987, 2019 U.S. Dist. LEXIS 50265, at *12 (D.N.J. March 25, 2019) ("Cooper is not a New Jersey resident (she is a resident of Ohio) and Cooper did not suffer any alleged injuries in New Jersey (she was allegedly injured in Ohio), and thus Cooper is barred from proceeding as a class representative for the NJJFA claims."); *In re Refrigerant Compressors Antitrust Litig.*, No. 09-2042, 2012 U.S. Dist. LEXIS 98827, at *1 (E.D. Mich. July 17, 2012) ("[T]he named IP Plaintiffs lack constitutional standing to bring claims under the laws of states/territories where no named IP Plaintiff claims to reside or have been injured."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("[A] plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state."). Therefore, Plaintiff's California claims on the behalf of the sub-class of California residents are dismissed.

Citing this Court's decision in *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529 (D.N.J. Sept. 21, 2011),[1] Defendants next contend that Plaintiff is precluded from bringing claims relating to the following class vehicles: the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3L. He did not lease these particular makes and models, and, as such, he did not suffer an injury-in-fact with respect to those models. In response, Plaintiff cites a line of district court cases for the proposition that this issue should be more appropriately decided within the context of a motion for class certification, not a dismissal motion. Plaintiff additionally maintains that he may assert claims as to all Class Vehicles, as long as he demonstrates that they are sufficiently similar. However, I disagree, because Plaintiff has failed to adequately allege that the Class Vehicles are sufficiently similar.

Plaintiff is correct that he may have standing to assert claims regarding other models of vehicles that he did not lease, so long as all Class Vehicles, including his own, have sufficiently similar powertrain components and common defects. Indeed, "[a] plaintiff may have standing to assert claims on behalf of putative class members regarding products [he] did not personally purchase where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants." *See Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975); *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 U.S. Dist. LEXIS 169040, at *9 (D.N.J. Dec. 7, 2016); *Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 U.S.

---

[1]     In *Lieberson*, I found that a named plaintiff in a putative class action lacked standing to assert claims on two out of four baby bath products that did not allegedly work as advertised, because she neither purchased nor used those products. *Lieberson*, 865 F. Supp. 2d at 537. More specifically, I determined that the plaintiff could only assert claims regarding the products which she purchased, because she did not rely on the alleged misleading labels of the products which she never bought. *Id.*

Dist. LEXIS 138454, at *47 (D.N.J. June 25, 2012). Based on these factors, Plaintiff lacks standing to assert claims on behalf of class members who only owned or leased the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3. Plaintiff leased a 2017 Hyundai Sante Fe Sport 2.4. Indeed, Plaintiff fails to adequately allege that the Class Vehicles all have similar powertrain components and defects, such that all three vehicular models are so closely related that standing would be conferred upon Plaintiff. Without these allegations, all claims related to the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3 are dismissed for lack of standing on the part of Plaintiff. Plaintiff can only represent class members who have leased or purchased the 2017 Hyundai Sante Fe Sport 2.4, his model vehicle.

## B. Omission-Based Claims

In the Complaint, Plaintiff asserts NJCFA, common law fraud, and negligent misrepresentation claims. Moreover, although Plaintiff, in his pleading, references affirmative misrepresentations which Defendants purportedly made, Plaintiff's brief only discusses Defendants' alleged failure to disclose the "defective nature of the Class Vehicles" before the date on which he leased his vehicle. Plaintiff's Opposition Brief ("Pl.'s Brief"), 2. Thus, because, according to Plaintiff, each of these claims are based only upon omissions of material facts, rather than the affirmative misrepresentations, I will not consider misrepresentations as the basis for Plaintiff's fraud and negligent misrepresentation claims.

### i. NJCFA

Count Seven of the Complaint asserts a violation of the NJCFA, on the basis of Defendants having "knowingly concealed, suppressed, and/or omitted the existence of the Powertrain Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter." Compl. ¶ 133.

"It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282 (D.N.J. Nov. 30, 2009)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. However, within the context of omission-based claims, such as the one here, district courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 307 (D.N.J. 2013) (quotations omitted).

To state a claim under the NJCFA, a plaintiff must allege three elements: "(1) unlawful conduct by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Unlawful conduct "fall[s] into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202. Relevant here, asserting an NJCFA claim on the basis of a material omission requires "the plaintiff [to] show that the defendant acted with knowledge, and intent is an essential element of the fraud."[2]

---

[2] Although Plaintiff argues that Defendants possessed the requisite knowledge of the Powertrain Defect within the context of his claim for common law fraud, the Court first addresses these contentions in considering his NJCFA claim. Indeed, Plaintiff's representations as to Defendants' knowledge of the Powertrain Defect are equally applicable to the issue whether he has sufficiently alleged the NJCFA's element of unlawful conduct on the basis of a material omission, as discussed below.

*Bosland*, 197 N.J. at 556. In contrast, "[o]ne who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997). Thus, if a plaintiff fails to allege that the defendant had knowledge of a defect, the failure to inform the plaintiff of that defect is not actionable under the NJCFA. Because the parties only dispute the first two elements on this motion, the Court need not discuss whether a causal relationship between Defendants' alleged unlawful conduct and Plaintiff's ascertainable loss exists under the NJCFA.

Here, Plaintiff asserts a single unlawful act of a material omission: Defendants concealed the Powertrain Defect from the owners and lessees of the Class Vehicles at the time of sale or lease. To establish Defendants' knowledge of the Powertrain Defect, Plaintiff primarily relies on anonymous consumer complaints posted online and Defendants' issuance of three TSBs, which were posted or issued both before and after Plaintiff's lease.

More specifically, Plaintiff references 29 consumer grievances which were posted on the NHTSA's website by Class Vehicle owners and lessees, spanning from October 7, 2016 to August 1, 2018. Compl. ¶¶ 42-43. Plaintiff also points to two TSBs issued by Defendants on July 12, 2017 and November 1, 2017, relating to the 2017-2018 Santa Fe Sport 2.0T and the 2017-2018 Santa Fe 3.3L vehicles, neither of which Plaintiff leased. Compl. ¶ 135. Although their contents are not alleged in the Complaint, according to the NHTSA's website, these TSBs both stated: "[t]his bulletin describes the procedure to update the Traction Control System (TCS) logic on some [of the previously mentioned vehicles]. This update helps reduce unnecessary TCS engagement during low speed / dry road acceleration." However, these examples do not demonstrate Defendants' knowledge of the Powertrain Defect.

First, Plaintiff fails to allege an adequate basis to support the fact that Defendants were aware of the anonymous consumer complaints posted online. Indeed, Plaintiff merely asserts that these complaints "demonstrate that the [Powertrain] Defect is widespread and dangerous," without alleging that Defendants either monitored or tracked the NHTSA's website. In a similar vein, Plaintiff does not allege that the NHTSA informed Defendants about the posted complaints. Absent such allegations, consumer complaints on third-party websites are insufficient to support a manufacturer's knowledge of an alleged defect. *See, e.g.*, *Oliver v. Funai Corp.*, No. 14-04532, 2015 U.S. Dist. LEXIS 169998, at *10 (D.N.J. Dec. 21, 2015) ("[I]mputing knowledge of a defect to a manufacturer based upon an internet posting would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery.") (quotations omitted); *Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 U.S. Dist. LEXIS 24211, at *20 (D.N.J. Feb. 21, 2014); *Wiseberg v. Toyota Motor Corp.*, No. 11-3776, 2012 U.S. Dist. LEXIS 45849, at *38 (D.N.J. Mar. 30, 2012) ("While anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that Toyota was aware of these complaints."); *Rait v. Sears*, No. 08-2461, 2009 U.S. Dist. LEXIS 70217, at *13 (D.N.J. Aug. 10, 2009).

Second, even if the Court were to presume that Defendants were aware of the online postings, the consumer complaints and the TSBs also do not indicate that Defendants had knowledge of the Powertrain Defect as to Plaintiff's model vehicle at the time of Plaintiff's lease. Approximately half of the consumer complaints and two of the TSBs were neither posted nor issued before October 2016, the date on which Plaintiff leased his vehicle. Clearly, Plaintiff cannot rely on events which occurred after his lease, in order to establish that Defendants were aware of the alleged defect during that relevant timeframe. *See, e.g.*, *Granillo v. FCA US LLC*,

No. 16-153, 2016 U.S. Dist. LEXIS 116573, at *29 (D.N.J. Aug. 29, 2016) (holding that complaints and TSBs which were posted and issued after the plaintiffs purchased their vehicles "certainly cannot support an inference that Defendant had the requisite knowledge as of" the date on which the purchases occurred); *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 U.S. Dist. LEXIS 70945, at *19 (D.N.J. June 2, 2015) ("[T]o the extent that [the plaintiff's] NJCFA claim relies on consumer complaints made to the NHTSA, these complaints were all made well after [the plaintiff] purchased his vehicle, and so they cannot show that Mazda was aware of the defect at that time."); *Oliver v. Funai Corp.*, No. 14-04532, 2015 U.S. Dist. LEXIS 169998, at *10 (D.N.J. Dec. 21, 2015) (consumer complaints posted after the product was purchased do not support allegations of pre-sale knowledge).

As to the remaining complaints and the single TSB which were posted or issued "before Plaintiff leased his vehicle," Plaintiff does not discuss their contents. Pl.'s Brief, at 8. Instead, Plaintiff invites the Court to visit the NHTSA's website, in order to ascertain this information directly from that source.[3] Moreover, Plaintiff appears to suggest that his omission-based NJCFA claim is viable, merely because these consumer complaints were posted before Plaintiff leased his vehicle. However, Plaintiff oversimplifies the pertinent inquiry on this motion.

As the NHTSA's website reveals, twenty-six consumer complaints were posted online from May 7, 2016 to September 29, 2016, a period prior to Plaintiff's lease. In addition, Defendants originally issued a TSB on August 2, 2016, which stated: "[t]his bulletin provides information related to the TCU software update for the subject vehicles that may experience a

---

[3]     The Court notes that the consumer complaints which were posted before Plaintiff's lease are not attached to the Complaint or Plaintiff's opposition brief. Plaintiff is well-advised that it is not the task of this Court to rifle through the consumer complaints which were filed on the NHTSA's website, in order to ascertain their contents. Nevertheless, having reviewed these consumer complaints, the Court finds that they do not support Defendants' knowledge of the alleged Powertrain Defect with respect to Plaintiff's particular vehicle, as further discussed *infra*.

transmission hesitation or shift shock when accelerating at slow speeds." However, Plaintiff cannot rely upon these complaints and the August 2016 TSB in order to demonstrate that Defendants were aware of the Powertrain Defect with respect to his particular vehicle. With respect to the online complaints, they either pertain to a vehicle which Plaintiff did not lease, or the complaints do not specify a particular vehicle. Thus, even if Defendants monitored the NHTSA's website, these complaints would fail to provide them with knowledge of the alleged defect in connection with Plaintiff's vehicle. The August 2016 TSB, too, suffers from a lack of specificity, as it does not indicate the particular model to which it applies; nor is this information provided in the Complaint, such that the Court can infer knowledge.

Based on these deficiencies, Plaintiff, at best, can only show that the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3L, neither of which he leased, presented issues like the one his vehicle allegedly suffered. As discussed *supra*, however, Plaintiff lacks standing to assert claims related to both of these vehicles, as he did not lease them. Rather, any issues with respect to these two model vehicles are irrelevant on this motion, as Plaintiff does not allege that all of the Class Vehicles, including his own, are comprised of similar powertrain components and defects. Accordingly, Plaintiff has not pled sufficient facts that Defendants were aware of the Powertrain Defect, without having to resort to mere speculation. *See, e.g., Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *15 ("Courts in this Circuit have found that, in order to show knowledge of a defect, consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles.") (citations omitted); *see also Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 U.S. Dist. LEXIS 149199, at *27 (D.N.J. Dec. 29, 2011); *McQueen v. BMW of N. Am.*, No. 12-06674, 2014 U.S. Dist. LEXIS 21084, *13 (D.N.J. Feb. 20, 2014).

Finally, although Plaintiff alleges knowledge based on "pre-production testing, pre-production design failure mode and analysis date, production design failure mode and analysis date, early consumer complaints made exclusively to Hyundai's network of dealers, testing conducted by Hyundai in response to consumer plaints, and repair order and parts date received by Hyundai," with nothing more, these general allegations fail to support that Defendants were aware of the Powertrain Defect before October 2016. *See, e.g., Granillo*, 2016 U.S. Dist. LEXIS 116573, at *29 (rejecting the plaintiffs' nearly identical allegations of "pre-release testing data, early consumer complaints to dealers, data from dealers, warranty claim data, customer complaints . . . , dealership repair orders, [and] testing conducted in response to owner or lessee complaints," as insufficient to show knowledge, because the plaintiffs failed to support them with any specific information."). Accordingly, the Court finds that Plaintiff has failed to sufficiently allege unlawful conduct on the basis of a knowing omission as defined under the NJCFA.

In addition, the parties dispute whether Plaintiff has adequately satisfied the element of ascertainable loss. Ascertainable loss is set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." *D'Agostino v. Maldonado*, 216 N.J. 168, 184-85 (2013). "[T]he plain language of the Act unmistakably makes . . . ascertainable loss a prerequisite for a private cause of action. An ascertainable loss under the NJCFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" *Id*. at 185 (internal citations and quotations omitted); *see Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009) (defining term "ascertainable loss" to "mean[] that plaintiff must suffer a definite, certain and measurable

loss, rather than one that is merely theoretical") (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)).

Moreover, there are three recognized theories of ascertainable loss that may apply to a NJCFA claim. *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015); *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *22 (D.N.J. Mar. 26, 2012). Either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle. *Hammer*, 2012 U.S. Dist. LEXIS 40632, at *22. The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. *Id*. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered. *Id*. Under the third theory, an ascertainable loss can include a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund. *Id*.

Here, Plaintiff alleges that he has suffered an ascertainable loss, since he was "mislead into leasing his Class Vehicle which was worth less than promised [as a result of the] Powertrain Defect." Pl.'s Opp., at 14. According to Plaintiff, he has suffered an "out-of-pocket" loss constituting the "difference between the value of the vehicle with a fully functioning powertrain versus the value of the vehicle with the Powertrain Defect." *Id*. Indeed, "had Plaintiff known the true nature of the vehicle" as he alleges, "he would not have leased the vehicle on the same terms and would have paid less," or he would have leased a comparable vehicle instead. *Id*. However, Plaintiff's out of pocket loss theory fails.

As a preliminary matter, the Court questions whether Plaintiff would have leased a vehicle, in the first instance, with a faulty powertrain, particularly since he alleges that this defect

creates a significant safety hazard. Notwithstanding Plaintiff's confounding theory, he has failed to plead an ascertainable loss that is sufficiently quantifiable or measurable in nature. In that connection, Plaintiff has not provided any information with respect to the terms of his leased vehicle, including its price; nor has he alleged any facts that describe what a hypothetical lease for a vehicle with a defective powertrain would be, in order for the Court to ascertain, or even reasonably estimate, the difference in value between Plaintiff's lease and the alleged lease which he would have executed. Rather, Plaintiff merely contends that he "would have paid less" if he was informed about the condition of his Class Vehicle. With nothing more, this theory of "loss" is purely based on conjecture. Alternatively, in the event Plaintiff would have have leased a different vehicle, he does not identify a comparable vehicle or allege its price. These allegations cannot satisfy the ascertainable loss element, as Plaintiff has not shown that his alleged out of pocket losses are readily quantifiable. *See, e.g., In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2019 U.S. Dist. LEXIS 16381, at *76 (D.N.J. Feb 1, 2019) (finding that the plaintiffs failed to pled an ascertainable loss, where they merely alleged that they "would not have purchased or leased the [defective vehicle] at the prices they paid, or would have purchased or leased a less expensive alternative," without providing any more detail).

Accordingly, the Court finds that Plaintiff has failed to plead unlawful conduct or ascertainable loss, and, therefore, fails to state an individual claim under the NJCFA. In lieu of dismissal, however, Plaintiff shall be given leave to amend his Complaint to cure the deficiencies discussed above.

      *ii.*       *Common Law Fraud by Omission*

Count One of the Complaint asserts a common law fraud by omission claim, on the basis of Defendants' "failure to disclose" that "the powertrain system in the class vehicles is defective[.]" Compl. ¶ 67.

Pursuant to New Jersey law, a plaintiff must allege five elements to succeed on a common law fraud claim: (1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Realtors*, 148 N.J. 582, 367 (1997); *Coba v. Ford Motor Co.*, No. 12-1622, 2016 U.S. Dist. LEXIS 136283, at *37 (D.N.J. Sept. 30, 2016) ("Common law fraud involves a more onerous standard than a claim for fraud under the CFA because under the CFA a plaintiff does not have to prove that he was actually misled or deceived."). Although fraud claims are subject to the strictures of Rule 9(b), courts within this district have held that the heightened pleading standard "is somewhat relaxed in a case based on a fraudulent omission." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 614 (D.N.J. 2014).

As a threshold issue, Plaintiff fails to adequately allege that Defendants had a duty to disclose the Powertrain Defect. In that regard, a plaintiff may only assert an omission-based fraud claim if the defendant possesses a duty to disclose. As the Third Circuit has clarified, "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a special relationship." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). The three types of relationship which establish a duty to disclose include: "(1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and

trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Id.* (citation omitted).

Here, Plaintiff's common law fraud claim solely arises from Defendants' alleged "failure to disclose" the Powertrain Defect. Indeed, in his brief, Plaintiff clarifies that his fraud claim is "based on a fraudulent omission," as opposed to a "misrepresentation." Pl.'s Brief, at 3. Nevertheless, Plaintiff's Complaint is entirely devoid of facts to support that he shared any one of the three recognized "special relationship[s]" with Defendants, in order to establish a duty to disclose on their part. In fact, "New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers" within the context of omission-based fraud claims. *Coba v. Ford Motor Co.*, No. 12-1622, 2013 U.S. Dist. LEXIS 8366, at *12 (D.N.J. Jan. 22, 2013) (citations omitted); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 604 (D.N.J. 2016); *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 U.S. Dist. LEXIS 32584, at *14 (D.N.J. Mar. 31, 2010); *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 U.S. Dist. LEXIS 33377, at *8 (D.N.J. Mar. 18, 2015). Rather than allege special relationship, Plaintiff appears to argue that a duty to disclose was created on the sole basis of Defendants' knowledge with respect to the alleged defective powertrain. However, a party's "superior knowledge" is insufficient to impose a duty to disclose in New Jersey. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 U.S. Dist. LEXIS 33377, at *21 (D.N.J. 2015 Mar. 18, 2015) ("Such superior knowledge does not create a duty to disclose under New Jersey law."); *see also Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *28.

Nonetheless, even if Plaintiff adequately alleged a duty to disclose, his common law fraud claim would fail for the same reasons as his NJCFA claim. More specifically, Plaintiff's fraud claim is entirely based upon Defendants' alleged concealment of "the defective nature of the Class Vehicles," but, for the reasons previously described, he has failed to adequately allege that Defendants omitted a material fact with respect to the Powertrain Defect. Therefore, Plaintiff's common law fraud claim is likewise dismissed. *Gotthelf v. Toyota Motor Sales, U.S.A., In.*, 525 Fed. Appx. 94, 105 (3d Cir. 2013) (affirming the lower court's dismissal of the plaintiffs' common law fraud claim for the same reasons that the plaintiffs' NJCFA claim was dismissed, because the plaintiff did not demonstrate that "Toyota made any material misrepresentations or omissions of material fact[.]").

### iii.   *Negligent Misrepresentation*

Count Two of the Complaint asserts a claim for negligent misrepresentation, arising from Defendants alleged failure to disclose "the Powertrain Defect and its corresponding safety risk[.]" Compl, ¶ 74.

Under New Jersey law, to assert a claim for negligent misrepresentation, a plaintiff must allege the following three elements: "[1] the defendant negligently made an incorrect statement of a past or existing fact, [2] that the plaintiff justifiably relied on it and [3] that his reliance caused a loss or injury." *Masone v. Levine*, 382 N.J. Super. 181, 187 (App. Div. 2005) (citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983)). Moreover, a negligent misrepresentation claim may stem from a "defendant's silence or suppression of truth rather than on some affirmative misrepresentation[,]" and, when such circumstances are adequately pled, a plaintiff need not allege a "special relationship" with the defendant. *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 355 (3d Cir. 2004) (citations omitted). Rather, a claim for negligent

misrepresentation may arise from "any situation [which calls] for by good faith and common decency." *Id.*

Here, Plaintiff's negligent misrepresentation claim cannot stand for multiple reasons. First, as stated previously, New Jersey courts have found that a special relationship between an individual consumer and a vehicle manufacturer creating a duty to disclose does not exist. It is, therefore, incumbent upon Plaintiff to identify the circumstances under which good faith and common decency would arise. On that point, Plaintiff fails to plead such a transaction, as the Complaint is entirely silent with respect to this requirement. Rather, in a conclusory fashion, Plaintiff alleges—in his brief—that Defendants were obligated to act in good faith by disclosing the Powertrain Defect at the time of sale or lease. However, Plaintiff cannot advance this position, for the first time, in his opposition brief. Indeed, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Hughes v. UPS*, 639 Fed. Appx. 99, 104 (3d Cir. 2016) (citation and quotations omitted). In any event, Plaintiff has not alleged facts to support his position that the circumstances of this case somehow created a duty to disclose due to good faith and common decency. As such, Plaintiff's negligent misrepresentation claim is dismissed.

### C.     Unjust Enrichment

Count Six of the Complaint asserts a claim for unjust enrichment, because "Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices," at the "expense of Plaintiff." Compl., ¶¶ 123-24.

As a preliminary issue, New Jersey law does not recognize unjust enrichment as an independent tort cause of action. *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 U.S. Dist. LEXIS 77009, at *7 (D.N.J. June 6, 2014) ("New Jersey does not recognize unjust enrichment as

an independent tort cause of action.") (citations omitted); *Cafaro v. HMC*, No. 07-2793, 2008 U.S. Dist. LEXIS 71740, at *37 (D.N.J. Sept. 8, 2008) (finding that the plaintiffs' unjust enrichment claim should be dismissed because the allegations sounded in tort and not in quasi-contract); *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec. 9, 2008). Rather, "unjust enrichment . . . requires that plaintiff show that [he] expected remuneration from the defendant at the time it performed or conferred a benefit on defendant." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 555 (1994).

Here, the conduct underlying Plaintiff's claim of unjust enrichment sounds in tort. In the Complaint, Plaintiff does not allege that he either performed or conferred a benefit upon Defendants pursuant to a quasi-contractual relationship, for which he expected remuneration in return. Rather, Plaintiff only alleges tort-based claims which arise from Defendants' alleged "unlawful, unjust and inequitable conduct," *i.e.*, their failure to disclose and concealment of the Powertrain Defect. Clearly, Plaintiff could not have anticipated or expected remuneration as a result of Defendants' alleged fraudulent conduct. Accordingly, Plaintiff's unjust enrichment claim fails on this basis alone. *See, e.g., Pappalardo v. Combat Sports, Inc.,* No. 11-1320, 2011 U.S. Dist. LEXIS 147902, at *31-35 (D.N.J. Dec. 23, 2011); *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009); *Warma Witter Kreisler, Inc. v. Samsung Elecs., Am., Inc.*, No. 08-5380, 2009 U.S. Dist. LEXIS 112773, at *26 (D.N.J. Dec. 3, 2009).

In addition, in New Jersey, "[t]o establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110 (2007) (quoting *VRG Corp.*,

135 N.J. at 554). A claim of unjust enrichment, thus, requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim. *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505-06 (D.N.J. June 19, 2009). In that connection, "it is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998). For example, in *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 U.S. Dist. LEXIS 75810 (D.N.J. Sep. 29, 2008), *aff'd* by *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250 (3d Cir. 2010), the plaintiff filed a claim for unjust enrichment against Samsung after purchasing an allegedly defective television from a retailer, *Ultimate Electronics*. *Id.* at. *3-4. The court concluded that despite the fact that the television was manufactured by Samsung, there was no relationship conferring any direct benefit on Samsung through the plaintiff's purchase from the retailer, and that therefore plaintiff failed to establish unjust enrichment. *Id.* at *30-31.

Like *Cooper*, a direct relationship between Defendants and Plaintiff is lacking, as he leased his vehicle from Circle Auto Group, an authorized Hyundai dealer located in New Jersey, not HMA or HMC. Compl., ¶ 20. Moreover, Plaintiff's reliance upon *Morcom v. LG Elecs. USA, Inc.*, No. 16-4833, 2017 U.S. Dist. LEXIS 198935 (D.N.J. Nov. 30, 2017), fails to save his unjust enrichment claim. In that case, the court allowed the plaintiffs' unjust enrichment claim to survive past the dismissal stage, because the manufacturer engaged in an extensive "marketing campaign," through which "false representations" were made in order to generate retail sales for an allegedly defective product. *Id.* at *27-28. The court found that those particular circumstances established a direct relationship between the plaintiffs and the manufacturer, even though the disputed product was purchased from a retailer. *Morcom* is readily distinguishable from the

instant matter, as Plaintiff has not alleged that Defendants promoted the Class Vehicles through a false marketing campaign. To the contrary, this action arises from Defendants' alleged fraudulent omissions. Accordingly, Plaintiff's unjust enrichment claim is dismissed.

### D.    Breach of Warranty

####    *i.    Express*

In Count Three, Plaintiff asserts a breach of express warranty claim, alleging that Defendants have failed to provide Plaintiff "with a meaningful remedy for the Powertrain Defect." Compl., ¶ 91.

Express warranties in New Jersey are governed by Article 2 of the state's Uniform Commercial Code (UCC). *See* N.J.S.A. 12A:2-101, *et seq*. Section 12A:2-313 provides that express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. 12A:2-313. Under the UCC, "'parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.'" *Petri Paint Co. v. Omg Ams.*, Inc., 595 F. Supp. 2d 416, 422 (D.N.J. 2008) (quoting N.J.S.A. 12A:2-719, cmt. 1). In that regard, N.J.S.A. 12A:2-719 states that a contract "may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of the non-conforming gooxds parts" unless the remedy fails its essential purpose. *Petri Paint*, 595 F. Supp. 2d at 422 (quoting N.J.S.A. 12A:2-719(1)(a)).

To adequately plead a breach of express warranty claim under New Jersey law, a plaintiff must allege the following four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Cooper*, 374 Fed. Appx. at 253 (quotation and citation omitted); *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

Here, the parties do not dispute that Plaintiff's vehicle is covered by a ten-year/100,000-mile powertrain warranty, requiring Defendants to "repair or replac[e]" specific components of the "engine," "transmission," and "transaxle," or that the alleged powertrain defect manifested itself within the warranty period. Compl., ¶ 88. Plaintiff alleges that he brought his vehicle to an authorized Hyundai dealership on two separate occasions, when he experienced problems that related to power loss and acceleration. Specifically, Plaintiff explains that his "vehicle loses power while driving . . . [y]ou can hit the gas[,] the RPMS will go high and [the] vehicle will not move," and he also reported a five to six second delay in acceleration. *Id.*, at ¶ 22. According to Plaintiff, however, the dealership "failed to remediate the issue," and, although he ultimately notified "HMA's corporate headquarters," it, too, failed to resolve his vehicle's alleged powertrain defect. These allegations are sufficient to bring a claim for breach of the express warranty.

Without addressing the undisputed powertrain warranty, Defendants, nonetheless, contend that Plaintiff has not alleged a breach. Defendants' Motion to Dismiss ("Defs.' Motion"), at 23-24. In that regard, Defendants argue that Plaintiff's Complaint fails to address a series of specific questions that relate to "his interactions with the dealer," during the dates on which he brought his vehicle in for repair. However, Plaintiff's allegations need not be pled with

a level of particularity that Defendants advocate; indeed, a breach of the express warranty claim is not subject to the heightened pleading standard of Rule 9(b). *In re: Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 363 (M.D. Pa. 2013). Thus, because Plaintiff asserts that he informed Defendants about his vehicle's defective powertrain, without Defendants having remediated the issue in accordance with the provisions of the warranty, Plaintiff has adequately alleged a breach.[4]

### ii. Implied Warranty

Count Five asserts a claim for breach of the implied warranty. Plaintiff alleges that "[t]he Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for their ordinary purpose of providing safe and reliable transportation." Compl., ¶ 103.

New Jersey has adopted the Uniform Commercial Code, which provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J.S.A. 12A:2-314. The implied warranty of merchantability means that "the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *22 (D.N.J. July 21, 2011) (citation omitted). However, "[t]he implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson*, 865 F. Supp. at 542.

---

[4] Defendants challenge Plaintiff's allegations, because he has failed to assert that Defendants "refused" to repair or replace his vehicle's powertrain. However, Defendants' "hyper-technical" position is not persuasive, as Plaintiff need not allege any "magic word" in order to assert a breach of the express warranty claim. *Chernus*, 2018 U.S. Dist. LEXIS 70784, at *43. Indeed, for the reasons already describe *supra*, the Court finds that Plaintiff has alleged an adequate claim for breach of the express warranty.

Under New Jersey law, as applied to automobiles, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (citations and quotations omitted); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 U.S. Dist. LEXIS 147746, at *46 (D.N.J. Aug. 29, 2018) ("In New Jersey, the implied warranty that comes with the purchase of a car is simply a guarantee that [it] will operate in a safe condition and substantially free of defects[.]") (citation and quotations omitted); *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 U.S. Dist. LEXIS 166329, at *20 (D.N.J. Dec. 1, 2016); *Cox v. Chrysler Grp., LLC,* No. 14-7573, 2015 U.S. Dist. LEXIS 133393, at *31 (D.N.J. Sept. 30, 2015); *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 U.S. Dist. LEXIS 9256, at *46 (D.N.J. Jan. 24, 2014) (citations and quotations omitted); *Greene v. BMW of N. Am.*, No. 11-4220, 2012 U.S. Dist. LEXIS 168695, at *9 (D.N.J. Nov. 28, 2012) (citations and quotations omitted); *Henderson*, 2010 U.S. Dist. LEXIS 73624, at *27 (citation and quotations omitted).

Notwithstanding these well-established principles, Defendants contend that "the ordinary purpose of a vehicle is simply to provide transportation," regardless of whether the vehicle can be driven in a safe and reliable manner, citing to *Merkin v. Honda North Am., Inc.*, 2017 U.S. Dist. LEXIS 187233 (D.N.J. Nov. 13, 2017); *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 U.S. Dist. LEXIS 149199 (D.N.J. Dec. 29, 2011); *Sheris v. Nissan N. Am. Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS 43664 (D.N.J. June 3, 2008). However, Defendants' reliance on these cases is misplaced.

In *Merkin*, the Court dismissed the plaintiff's claim for breach of the implied warranty, where he merely complained of an alleged defect, occurring no more than "once or twice a week," which required him "to turn the ignition repeatedly" in order to "start his vehicle." *Merkin*, 2017 U.S. Dist. LEXIS 187233, at *2. However, *Merkin* is readily distinguishable from the instant case, as the alleged vehicular defect, in that case, did not present a potential safety hazard, but only a mere inconvenience. As such, the court, there, never discussed or reached the issue of safety.

In *Glass*, the plaintiffs failed to state a cognizable breach, because the duration of the implied warranty was limited to the terms of the express warranty, which had already expired by more than one year when the alleged vehicular defect manifested itself. *Glass*, 2011 U.S. Dist. LEXIS 149199, at *47. However, unlike *Glass*, Defendants do not dispute that Plaintiff discovered the alleged powertrain defect within the warranty period that is applicable to his vehicle.[5]

In *Sheris*, the plaintiff could not allege a breach of the implied warranty claim, because he was unable to show that his vehicle was "unmerchantable *or unsafe for driving*." *Sheris,* 2008 U.S. Dist. LEXIS 43664, at *13 (emphasis added). In that regard, the alleged vehicular defect, there, never manifested itself; instead, the plaintiff's "worn" brake pads and rotors were only

_____

[5]     For this same reason, the Court is not persuaded by Defendants' argument that Plaintiff "may not recover for breach of the implied warranty of merchantability," because he has driven his vehicle without issue for "years." Defs.' Motion, at 28. Generally, the implied warranty of merchantability does not have a warranty period; rather, the parties may limit such a period, or even eliminate the warranty altogether, in the terms of an express warranty. *See, e.g.*, *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *34-35; *Glass v. BMW of North Am., LLC*, 2011 U.S. Dist. LEXIS 149199, at *48-49; *Skeen v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 9256, at *48-49; *Suddreth v. Mercedes-Benz*, LLC, No. 10-5130, 2011 U.S. Dist. LEXIS 126237, at *12 (D.N.J. Oct. 31 2011). Here, because the express warranty does not limit the warranty period of the implied warranty, and because Plaintiff's powertrain defect fell within the express warranty period, the Court cannot find that by merely driving two years, his implied warranty period has run, or that his vehicle was merchantable.

discovered after he brought his vehicle in for servicing. *Id.* at *2-3. However, unlike *Sheris*, where the plaintiff argued that his vehicle's components would eventually cause a potentially hazardous driving condition "if not corrected," Plaintiff, here, complains of an alleged vehicular defect which has already manifested itself, and it presented a potentially dangerous driving condition.

Thus, the cases upon which Defendants rely are distinguishable. In fact, Defendants' exact argument has already been rejected by another court within this circuit. *See, e.g., Bang*, 2016 U.S. Dist. LEXIS 166329, at *20 (finding that the breach of the implied warranty of merchantability claim was properly alleged, even though the defendants contended that the disputed vehicles "continued to perform their ordinary function of providing transportation," because the defect in question allegedly "pose[d] an unreasonable safety hazard."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017) ("It is well recognized, both as a matter of law and common sense, that a merchantable vehicle under the statute requires more than the mere capability of just getting from point A to point B.") (quotations omitted). Therefore, the Court finds that a breach of the implied warranty can be based on an alleged safety defect of a vehicle.

Next, regarding safety, Plaintiff alleges that the powertrain defect occurs unexpectedly and caused the following problems while driving: significantly delayed acceleration (including but not limited to delayed acceleration when turning or merging onto a road or highway), loss of power, rough shifting, jerking, lurching, and/or engine revving associated with the delayed acceleration. Compl., ¶ 1, 5. Indeed, according to Plaintiff, his own vehicle "loses power while driving," and its acceleration suffers from a delayed response which sometimes requires more than five to six seconds before initiating. Compl., ¶ 22. Because these conditions constitute

serious safety concerns, Plaintiff has sufficiently alleged that his vehicle is unfit for the ordinary purpose of providing transportation in a safe and reliable manner. That Plaintiff "does not say that he is unable or unwilling to use his vehicle," as Defendants argue, is not relevant to my inquiry on this motion. *Kearney*, 2018 U.S. Dist. LEXIS 147746, at *46 ("BMW NA's argument that [the plaintiff's vehicle continues to 'fulfill[] the ordinary purpose of a car' and thus remains merchantable simply because Barr continues to own the vehicle is similarly unavailing."). Accordingly, the Court finds that Plaintiff has adequately alleged a breach of the implied warranty.

### iii.     *Magnuson-Moss Warranty Act*

Count 5 asserts a violation of the Magnuson-Moss Warranty Act ("MMWA"), on the basis of Defendants' failure to comply with their written and implied warranties. Compl., ¶¶ 105-119.

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Magnuson-Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Cooper*, 2008 U.S. Dist. LEXIS 75810, at *6 (D.N.J. Sept. 30, 2008); *see also In re Ford Motor Co. Ignition Switch Prods. Liability Litig.*, 19 F. Supp. 2d 263, 267 (D.N.J. 1998) (explaining that, "[i]n order for plaintiffs to state a claim for relief against Ford under the Magnuson—Moss Act, they must first establish a claim for breach of express warranty, under an applicable state law").

Although Plaintiff has successfully pled express and implied warranty claims, his MMWA claim is not viable. Indeed, as Defendants argue, Plaintiff has not complied with "the alternative dispute resolution procedure available through the Better Business Bureau's BBB Auto Line," which is explicitly set forth in the powertrain warranty. Def.'s Motion, at 28-29. In that regard, that MMWA provides that, in a class action complaint, "a class of consumers may not proceed in a class action . . . unless the named plaintiffs initially resort to such [informal dispute settlement] procedures." 15 U.S.C. § 2310(a)(3)(C)(ii). Where the warrantor has provided a valid informal dispute resolution mechanism, a claimant must first exhaust that mechanism before filing a Magnuson-Moss claim. *Sheris*, 2008 U.S. Dist. LEXIS 43664, at *22 (citation omitted).

Here, Plaintiff concedes that he did not comply with the dispute resolution procedures set forth in the express warranty. Citing one out-of-circuit, non-binding district court decision, *Persad v. Ford Motor Co.*, No. 17-12599, 2018 U.S. Dist. LEXIS 117551, at *16 (E.D. Mich., July 16, 2018), Plaintiff contends that he was not required to pursue the informal resolution procedure, because it would have been futile. While Plaintiff does not cite, nor has this Court found, any decisions within this circuit that recognize such an exception, to the extent that it is applicable, Plaintiff has not alleged futility. In *Persad*, the plaintiff identified specific consumer complaints and an NHTSA report concerning the defendant's "inability to remedy" the alleged defect, and raising "concerns over the effectiveness" of the defendant's informal dispute resolution procedures. *Id*. at *16. Unlike the plaintiff in *Persad*, Plaintiff, here, relies only upon his own beliefs, alleging that "the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure. . . is excused and deemed satisfied." Compl., ¶ 117. With nothing more, Plaintiff's

conclusory allegations, within this context, cannot raise an inference of futility. Accordingly, Plaintiff's MMWA claim is dismissed.

## IV. CONCLUSION

For the all the reasons express herein, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's NJCFA, MMWA, negligent misrepresentation, California's Consumer Legal Remedies Act, and California's Unfair Competition Law claims are dismissed without prejudice, as well as any claims which are asserted in connection with the Class Vehicles, *i.e.*, the 2017-2018 Sante Fe Sport 2.0T and the 2017-2018 Sante Fe Sport 3.3L vehicles. Plaintiff is given leave to amend the Complaint only as to his NJCFA and negligent misrepresentation claims within 20 days from the date of the Order accompanying this Opinion. In addition, the California sub-class is stricken from the Complaint and the California claims asserted on behalf of that subclass are dismissed. Plaintiff is directed to submit supplemental briefing on the issue of choice of law related to his nationwide class claims, by no later than August 23, 2019.  Defendant shall respond by September 6, 2019.


Dated: July 29, 2019


/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge